## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NESSCAP CO., LTD., | ) |
| | ) |
| Plaintiff and | ) |
| Counterclaim Defendant, | ) |
| | ) |
| v. | ) C.A. No. 06-00764-GMS |
| | ) |
| MAXWELL TECHNOLOGIES, INC., | ) |
| | ) |
| Defendant and | ) |
| Counterclaim Plaintiff. | ) |
| _____ | ) |

## DECLARATION OF BRIAN M. KRAMER IN SUPPORT OF MAXWELL TECHNOLOGIES, INC.'S MOTION TO TRANSFER NESSCAP CO., LTD.'S COMPLAINT FOR PATENT INFRINGEMENT

I, Brian M. Kramer, hereby declare as follows:

1.      I am a member of the state bar of California and am associated with the law firm of Morrison & Foerster LLP, which represents Defendant Maxwell Technologies, Inc. ("Maxwell") in both this action and the first-filed lawsuit filed by Maxwell in the United States District Court for the Southern District of California entitled *Maxwell Techs., Inc. v. NessCap, Inc. et al.*, No. 06-cv-2311 (S.D. Cal. Filed Oct. 17, 2006) ("the San Diego action").  I am admitted *pro hac vice* to practice before this Court.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently as to them.

2.      Attached hereto as Exhibit 1 is a true and correct copy of a press release dated December 15, 2006, entitled "NessCap Files Patent Infringement Lawsuit Against Maxwell Technologies."  I downloaded the press release on January 30, 2007, from NessCap's website, http://www.nesscap.com.

1

3.      Attached hereto as Exhibit 2 is a true and correct copy of excerpts of NessCap Co. Ltd.'s November 9, 2006 Memorandum of Points and Authorities in Support of Defendant NessCap Co., Ltd.'s Motion to Dismiss Plaintiff's First Amended Complaint For Insufficient Service of Process, D.I. 26-2 in the San Diego action.

4.      Attached hereto as Exhibit 3 is a true and correct copy of excerpts of Defendant NessCap Co., Ltd.'s December 21, 2006 Reply in Support of Motion to Dismiss First Amended Complaint For Insufficient Service of Process, D.I. 36-1 in the San Diego action.

5.      Attached hereto as Exhibit 4 is a true and correct copy of excerpts of Defendant Nesscap, Inc.'s December 21, 2006 Reply in Support of Motion to Dismiss First Amended Complaint for Lack of Personal Jurisdiction and Insufficient Service of Process, D.I. 37-1 in the San Diego action.

6.      Attached hereto as Exhibit 5 is a true and correct copy of excerpts of Maxwell Technologies, Inc.'s November 2, 2006, Memorandum of Points and Authorities In Support of Plaintiff Maxwell Technologies, Inc.'s Motion for Preliminary Injunction, D.I. 13 in the San Diego action.

7.      Attached hereto as Exhibit 6 is a true and correct copy of pages printed from the website of Interface Displays & Controls, Inc., a San Diego manufacturer of control and display devices for a variety of man-machine interfaces.  I downloaded the pages from http://www.interfacedisplays.com/company/management.htm on February 5, 2007.  Exhibit 7 is a true and correct copy of the company's management organization chart, which I downloaded at http://www.interfacedisplays.com/pdfs/form083_org_chart.pdf.

8.      I spoke with Dr. Priya Bendale approximately four times during the past month regarding her role as a possible witness in both this action and the first-filed action in the Southern District of California.  Dr. Bendale is Maxwell's former Senior Director of Research and Development and is the first named inventor of one of two

patents-in-suit in the San Diego action. That same patent has been called into issue by NessCap in its declaratory judgment action against Maxwell in this Court, C.A. No. 07-035 ("the second Delaware action"). Dr. Bendale told me that she did not want to come to Delaware to testify for both personal and professional reasons. Specifically, she explained to me that her current position as Vice President of Engineering for Interface Displays & Controls, Inc. keeps her very busy and that traveling to Delaware to provide testimony would be inconvenient compared to providing the same testimony in San Diego. She further noted that her current employer would likely not allow her to travel to Delaware to testify for her former employer.

9.    Attached hereto as Exhibit 8 is a true and correct copy of pages printed from the website of Ionix Power Systems, LLC, a San Diego developer of products and tools designed to aid in the development of batteries, fuel cells, and advanced capacitors. I downloaded the "President's Message" on February 5, 2007 from http://www.ionixpower.com/pres_message.htm.

10.    I spoke to Mr. C. Joseph Farahmandi approximately three times during the past month regarding his role as a possible witness in this action and the San Diego litigation. Mr. Farahmandi is Maxwell's former Technical Director of Research and Development and is now the President of Ionix Power Systems, LLC, a San Diego based company. Mr. Farahmandi told me that he is too busy to be involved in this litigation and that he did not want to come to Delaware to testify.

11.    Attached hereto as Exhibit 9 is a true and correct copy of the "Judicial Caseload Profile" for the United States District Court for the District of Delaware. I downloaded the profile from the website of the Administrative Office of the United States Courts on January 16, 2007, at http://www.uscourts.gov/cgi-bin/cmsd2005.pl.

12.    Attached hereto as Exhibit 10 is a true and correct copy of the "Judicial Caseload Profile" for the United States District Court for the Southern District of California. I downloaded the profile from the website of the Administrative Office of

the United States Courts on January 16, 2007, at http://www.uscourts.gov/cgi-bin/cmsd2005.pl.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 6, 2007, in San Diego, California.

Brian M Kramer

Brian M. Kramer

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on February 6, 2007, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Denise Seastone Kraft, Esquire
> EDWARDS ANGELL PALMER & DODGE LLP
> 919 North Market Street
> Suite 1500
> Wilmington, DE 19801
> *dkraft@eapdlaw.com*

I further certify that on February 6, 2007, the foregoing document was served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated below:

> **BY E-MAIL ON FEBRUARY 6, 2007AND**
> **FEDERAL EXPRESS ON FEBRUARY 7, 2007**
>
> George W. Neuner, Esquire
> Brian M. Gaff, Esquire
> EDWARDS ANGELL PALMER & DODGE LLP
> 101 Federal Street
> Boston, MA 02110

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> /s/ *Karen E. Keller*
> Karen E. Keller (No. 4489)
> The Brandywine Building, 17th Floor
> 1000 West Street
> Wilmington, DE 19801
> 302-571-6600
> *kkeller@ycst.com*

EXHIBIT 1






HOME > COMPANY INFO > PRESS RELEASE



**COMPANY INFO**
- About NessCap
  - History
  - Award & Authentication
  - Press Release
  - Papers
  - Organization
- Contact
- Recruiting

| NessCap Files Patent Infringement Lawsuit Against Maxwell Technologies | Date 2006-12-15 | Read - 376 |
|---|---|---|

## NessCap Files Patent Infringement Lawsuit Against Maxwell Technologies

SEOUL, SOUTH KOREA - NessCap Co. Ltd., a privately held company recognized as a global leader in ultracapacitor technology, product development, sales and manufacturing has filed a patent infringement lawsuit against Maxwell Technologies, (Nasdaq: MXWL) a San Diego, California based ultracapacitor manufacturer. The lawsuit alleges that Maxwell's products, including the D cell product line of Boostcap® ultracapacitors, infringe NessCap's patented intellectual property. NessCap filed the lawsuit in the United States District Court for the District of Delaware in Wilmington, Delaware. NessCap is represented in the lawsuit by Edwards Angell Palmer & Dodge LLP.

"NessCap has invested significant capital, resource and effort in developing our own proprietary and patented technology and we will not allow Maxwell to infringe" said Dr. Sunwook Kim, NessCap's founder and chairman of the board.

Dr. Kim further observed: "for whatever reason, after our merger discussions ended abruptly, Maxwell started the legal battle by filing a lawsuit against us for infringement in San Diego, which we will demonstrate has absolutely no merit. We and our legal team have conducted an extensive review of our patent estate and we have determined that NessCap ultracapacitors, which Maxwell accuses of infringement, are protected by NessCap patents that predate the Maxwell patents at issue in the San Diego lawsuit. We are convinced that we have a very strong position."

NessCap is a global leader in technology innovation and product development of ultracapacitors. We feature the widest array of standard commercial products in the market from 3 farads to 5000 farads with industry recognized alternative organic electrolytes. Our NessCap products are available in both cells and modules for the transportation, power and consumer markets. Technical and sales information can be found at www.nesscap.com.

COPYRIGHT ⓒ 2005 NESSCAP CO. LTD. ALL RIGHTS RESERVERD.

Case 1:06-cv-00764-GMS     Document 15-2     Filed 02/06/2007     Page 3 of 37

.

EXHIBIT 2

Callie A. Bjurstrom, State Bar No. 137816
Email: cbjurstrom@luce.com
Michelle A. Herrera, State Bar No. 209842
Email: mherrera@luce.com
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
600 West Broadway, Suite 2600
San Diego, California 92101-3372
Telephone No.: 619.236.1414
Fax No.: 619.232.8311

Brian M. Gaff, State Bar No. 202896
Email: bgajj@eapdlaw.com
EDWARDS ANGELL PALMER & DODGE LLP
101 Federal Street
Boston, MA 02110-1810
Telephone: 617-439-4444
Facsimile: 617-439-4170

Attorneys for NessCap, Co., Ltd.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAXWELL TECHNOLOGIES, INC., | Case No. 06CV2311-JAH(BLM) |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NESSCAP CO., LTD'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR INSUFFICIENT SERVICE OF PROCESS** |
| v. | |
| NESSCAP, INC. and NESSCAP CO., LTD., | |
| Defendants. | **[F.R.C.P. 12(b)(5)]** |
| | Date: January 18, 2007 |
| | Time: 3:00 p.m. |
| | Crtrm: 11 |
| | Judge: The Hon. John A. Houston |
| | Complaint Filed: October 17, 2006 |

## I.     <u>INTRODUCTION</u>

Defendant NessCap Co., Ltd. moves the Court to dismiss Maxwell Technologies, Inc.'s ("Maxwell") Complaint pursuant to Fed. R. Civ. P. 12(b)(5) because service of process on NessCap Co., Ltd. was insufficient.

## II.     <u>STATEMENT OF FACTS</u>

NessCap Co., Ltd. ("LIMITED") is a company located only in South Korea and organized under Korean law. It is engaged in the research, development, production, and sales of electrical energy storage products known as "ultracapacitors." LIMITED has no offices in the United States, is not registered to do business anywhere in the United States, and has no registered agents in the United States. Its parent company is NessCap, <u>Inc.</u>, which is a Delaware corporation that is registered to do business in New York State. *See* Declaration of Myung Rae Cho ("Cho Declaration"), ¶¶ 2-4, filed concurrently herewith.

Maxwell is a company located in San Diego, California, and incorporated in Delaware. Maxwell filed its Complaint for patent infringement on October 17, 2006. On October 18, 2006, Maxwell filed a Motion for a Preliminary Injunction (Dkt. No. 3). The Summons and Complaint were hand delivered to the receptionist at the office of NessCap, <u>Inc.</u>'s attorney in New York City on October 18, 2006. *See* Declaration of Huhnsik Chung ("Chung Declaration"), ¶ 3, filed in support of Nesscap, <u>Inc.</u>'s motion to dismiss. *See* also Return of Service, Dkt. No. 9. No request to waive service was provided. Chung Declaration, ¶ 3.

On November 2, 2006, Maxwell filed a First Amended Complaint (Dkt. No.12) and a new Motion for a Preliminary Injunction (Dkt. No. 13), both of which again Maxwell hand delivered to the receptionist at the office of NessCap, <u>Inc.</u>'s attorney in New York City on the same day. Chung Declaration, ¶ 4. Again, no request to waive service was made. *Id.* at 4.

Maxwell contends that certain LIMITED products ("the Accused Products"), infringe U.S. Pat. Nos. 6,525,924 and 6,631,074 ("the patents-in-suit"). Maxwell alleges that LIMITED is infringing the patents-in-suit by making, using, and/or selling or offering for sale in the United States the Accused Products. This allegation is unfounded.

/ / /

1    **IV.**    <u>**CONCLUSION**</u>

2       For the reasons set forth above, NessCap Co., <u>Ltd.</u> respectfully requests that this Court

3   grant this Motion and dismiss the instant action.

4   DATED: November 9, 2006        LUCE, FORWARD, HAMILTON & SCRIPPS LLP

5

6                         By:   s/Callie A. Bjurstrom

7                               Callie A. Bjurstrom
                              Michelle A. Herrera

8                               Attorneys for Nesscap, Inc. and Nesscap Co., Ltd.

9   DATED: November 9, 2006        EDWARDS ANGELL PALMER & DODGE LLP

10

11                        By:   s/Brian M. Gaff

12                               George W. Neuner
                              Brian M. Gaff

13                               Attorneys for Nesscap, Inc. and Nesscap Co., Ltd.

14

15   3760956.1

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 06CV2311-JAH(BLM)

EXHIBIT 3

1  Callie A. Bjurstrom, State Bar No. 137816
   Email: cbjurstrom@luce.com
2  Michelle A. Herrera, State Bar No. 209842
   Email: mherrera@luce.com
3  LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   600 West Broadway, Suite 2600
4  San Diego, California 92101-3372
   Telephone No.: 619.236.1414
5  Fax No.: 619.232.8311

6  Brian M. Gaff, State Bar No. 202896
   Email: bgaff@eapdlaw.com
7  EDWARDS ANGELL PALMER & DODGE LLP
   101 Federal Street
8  Boston, MA  02110-1810
   Telephone: 617-439-4444
9  Facsimile: 617-439-4170

10 Attorneys for NessCap Co., Ltd.

11                  UNITED STATES DISTRICT COURT

12                SOUTHERN DISTRICT OF CALIFORNIA

13

14

15 MAXWELL TECHNOLOGIES, INC.,          Case No. 06CV2311-JAH(BLM)

       Plaintiff,                       **DEFENDANT NESSCAP CO., LTD.'S**
16                                       **REPLY IN SUPPORT OF MOTION TO**
   v.                                    **DISMISS FIRST AMENDED**
17                                       **COMPLAINT FOR INSUFFICIENT**
   NESSCAP, INC. and NESSCAP CO., LTD., **SERVICE OF PROCESS**
18
       Defendants.                       Date:  January 18, 2007
19                                       Time:  3:00 PM
                                         Crtrm: 11
20                                       Judge: The Hon. John A. Houston

21

22

23

24

25

26

27

28

**B.**    <u>NessCap, Inc. And LIMITED Do Not Share An Alter Ego Relationship.</u>

Faced with the prospect of dismissal for insufficient service, Maxwell attempts to show that LIMITED and NessCap, <u>Inc</u>. share an alter ego relationship and, in its Opposition (Dkt. No. 35), Maxwell repeats many of its earlier unsuccessful arguments in this regard.  *See* Opposition To NessCap, <u>Inc</u>.'s Ex Parte Application (Dkt. No. 32).  Maxwell fails to provide sufficient evidence to support its alter ego contention.  Indeed, the thrust of Maxwell's argument is that documents that collectively mention LIMITED and NessCap, <u>Inc</u>. – or that refer to the co-defendants using a common shorthand term – demonstrate an alter ego relationship between LIMITED and NessCap, <u>Inc</u>.

As set forth in co-defendant NessCap, <u>Inc</u>.'s separately filed reply, Maxwell clearly mischaracterizes its documentary evidence by selectively parsing the materials and ignoring other passages that distinguish LIMITED and NessCap, <u>Inc</u>.  Also, Maxwell contends that LIMITED and NessCap, <u>Inc</u>. have a single management team.  Opposition at 12.  As discussed in NessCap, <u>Inc</u>.'s separately filed reply, this is simply not true.

In the interest of brevity, LIMITED does not restate its arguments rebutting Maxwell's contention on the alter ego issue.  Instead, LIMITED incorporates herein by reference NessCap, <u>Inc</u>.'s arguments as set forth in its separately filed reply regarding the lack of personal jurisdiction over NessCap, <u>Inc</u>.  These arguments clearly show that Maxwell falls short of showing a basis to invoke the alter ego doctrine.

**C.**    <u>Service on NessCap, Inc. is Not Tantamount to Service on LIMITED.</u>

Maxwell's argument that service on NessCap, <u>Inc</u>. is effective as service on LIMITED is based on Maxwell's contentions that (i) NessCap, <u>Inc</u>. and LIMITED are the same entity, and/or (ii) that NessCap, <u>Inc</u>. is LIMITED's agent.  This argument is without merit.  NessCap, <u>Inc</u>. and LIMITED have a parent-subsidiary relationship but operate independently and distinctly.  As set forth in NessCap, <u>Inc</u>.'s separately filed reply, Maxwell fails to demonstrate that there is sufficient evidence to conclude that LIMITED is the alter ego of NessCap, <u>Inc</u>. for any purpose whatsoever.

/ / /

/ / /

1    Maxwell contends that it effected service pursuant to Fed. R. Civ. P. 4(h)(1) by delivery of

2    a copy of the summons and complaint to NessCap, Inc.'s registered agent in Delaware and then

3    relies on *Hickory*[1] to argue that its service is sufficient as to LIMITED.   Opposition at 23.

4    Maxwell's reliance on *Hickory* is misplaced.   As an initial matter, the *Hickory* court ruled that,

5    under the Federal Rules, service on subsidiaries was ***insufficient*** as to the parent holding

6    company.   The *Hickory* court reached this conclusion because, as in the instant case, there was no

7    alter ego relationship between the parent and subsidiaries, so service on one entity was not

8    effective as to service on the other.   *Hickory*, 213 F.R.D. at 554.

9    Maxwell also tries to justify its service by arguing that NessCap, Inc. is LIMITED's agent.

10   Opposition at 22 n.9, 24.   This argument is baseless.   The *Hickory* court analyzed the agency

11   argument and concluded that "for agency to exist, the subsidiary's activity must be integral to the

12   parent's business."   *Id.* at 553.   Indeed, the *Hickory* court notes that "a holding company's

13   investments weren't necessarily its agents, since the holding company could divest of those

14   investments and still be a holding company."   *Id.* (citing *Gallagher v. Mazda Motor of America*,

15   781 F. Supp. 1079, 1085 (E.D. Pa.1992).)   Similarly, the parent holding company is not an agent

16   for its investments.   NessCap, Inc.'s activity is not an integral part of LIMITED's business.

17   The facts of the instant case show that there is no evidence of an agency relationship

18   between NessCap, Inc. and LIMITED.   LIMITED operates independently from NessCap, Inc. and

19   NessCap, Inc.'s sole executive has no role in the day-to-day activities of LIMITED.   *See*

20   Declaration of Myung Rae Cho ("Cho Declaration"), Dkt. No. 26, ¶5.   Like in *Hickory*, Maxwell

21   has made no showing that NessCap, Inc. would be unable to function properly without LIMITED;

22   so, as in *Hickory*, an agency relationship does not exist for service of process.   *Hickory*, 213

23   F.R.D. at 554.   Accordingly, proper service of process on NessCap, Inc. has no bearing or effect

24   on LIMITED under the alter ego or agency theories on which Maxwell relies.

25   / / /

26   / / /

27

28   [1]   *Hickory Travel Systems, Inc. v. TUI AG et al.,* 213 F.R.D. 547 (N.D. Cal. 2003).

3                                          Case No. 06CV2311-JAH(BLM)

# III.

## CONCLUSION

For the reasons set forth above, LIMITED respectfully requests that this Court grant its Motion to Dismiss.

DATED: December 21, 2006      LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: s/Callie A. Bjurstrom
     Callie A. Bjurstrom
     Michelle A. Herrera
     Attorneys for NessCap Co., Ltd.

DATED: December 21, 2006      EDWARDS ANGELL PALMER & DODGE LLP

By: s/Brian M. Gaff
     George W. Neuner
     Brian M. Gaff
     Attorneys for NessCap Co., Ltd.

3775065.1

4

EXHIBIT 4

```
|¯¯¯¯¯¯¯¯¯¯¯¯¯¯¯¯¯¯¯¯¯¯¯¯¯¯¯¯¯|
|      CALENDARED           |
| MORRISON & FOERSTER       |
| DOCKET DEPT. SAN DIEGO    |
|                           |
|     January 26, 2007      |
|                           |
| FOR DATE(S) _____ |
|                           |
|    BY:  John Dukes        |
|_____|
```

1  Callie A. Bjurstrom, State Bar No. 137816
   Email: cbjurstrom@luce.com
2  Michelle A. Herrera, State Bar No. 209842
   Email: mherrera@luce.com
3  LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   600 West Broadway, Suite 2600
4  San Diego, California 92101-3372
   Telephone No.: 619.236.1414
5  Fax No.: 619.232.8311

6  Brian M. Gaff, State Bar No. 202896
   Email: bgaff@eapdlaw.com
7  EDWARDS ANGELL PALMER & DODGE LLP
   101 Federal Street
8  Boston, MA  02110-1810
   Telephone: 617-439-4444
9  Facsimile: 617-439-4170

10 Attorneys for NessCap, Inc.

11                 UNITED STATES DISTRICT COURT

12               SOUTHERN DISTRICT OF CALIFORNIA

13

14

15 MAXWELL TECHNOLOGIES, INC.,        Case No. 06CV2311-JAH(BLM)

16      Plaintiff,                    **DEFENDANT NESSCAP, INC.'S REPLY
                                      IN SUPPORT OF MOTION TO DISMISS
17 v.                                 FIRST AMENDED COMPLAINT FOR
                                      LACK OF PERSONAL JURISDICTION
18 NESSCAP, INC. and NESSCAP CO., LTD.,  AND INSUFFICIENT SERVICE OF
                                      PROCESS**
19      Defendants.
                                      Date:   January 18, 2007
20                                    Time:   3:00 PM
                                      Crtrm:  11
21                                    Judge:  The Hon. John A. Houston

22

23

24

25

26

27

28

1   For example, NessCap, <u>Inc</u>. clearly distinguishes itself from LIMITED in the prospectus

2 by revealing that LIMITED is the Korean subsidiary of NessCap, <u>Inc</u>. and clearly states that

3 manufacturing is in Korea. Prospectus, Parker Declaration, Ex. A at[2] 1, 5 (Dkt. No. 35).

4 According to Delaware corporate records, NessCap, <u>Inc</u>. was established in 2004. Parker

5 Declaration, Ex. C (Dkt. No. 35). In contrast, LIMITED was formed in 2001. Prospectus, Parker

6 Declaration, Ex. A at 1 (Dkt. No. 35). Clearly, then, LIMITED was engaged in the ultracapacitor

7 business for approximately three years before the inception of NessCap, <u>Inc</u>. Accordingly, it is

8 apparent that NessCap, <u>Inc</u>. and LIMITED are two distinct entities.

9   NessCap, <u>Inc</u>. was formed to raise investment capital to expand business and establish a

10 United States headquarters. *See* Declaration of Sunwook Kim ("Kim Declaration"), Dkt. No. 25,

11 ¶5; NessCap, Inc. Prospectus, Parker Declaration, Ex. A at 1, 6 (Dkt. No. 35). Ardour issued

12 NessCap, <u>Inc</u>.'s prospectus to communicate these goals to prospective investors. It is entirely

13 appropriate that the prospectus include a discussion of the nature of the business of its wholly

14 owned subsidiary LIMITED because that is where the investors' funds would be put to use. The

15 use of "NessCap" as a shorthand reference to both NessCap, <u>Inc</u>. and LIMITED simply facilitates

16 communication to prospective investors. Indeed, adopting Maxwell's argument would mean that

17 any parent and subsidiary that ever refer to themselves using a common shorthand reference

18 would blur the corporate distinctness that the law recognizes.

19   Notwithstanding the above, with respect to statements in a prospectus, Maxwell ignores

20 the case law on which it relies to support its Opposition. In *Mirrow v. Club Med, Inc.*, 1986 WL

21 6549, *1 (E.D. Pa.), the court held that statements in a prospectus provide ***insufficient*** evidentiary

22 support to conclude that one corporate entity is the alter ego of the other. Maxwell's argument

23 ignores the common business practice of using a single name when referring to a family of

24 companies and flies in the face of its own citation. In view of this unsound premise, Maxwell's

25 argument must be disregarded.

26 / / /

27

28

---

[2] Page numbers are those of the Prospectus, not Exhibit A.

   Case No. 06CV2311-JAH(BLM)

1    Maxwell now requests discovery on this issue.  Although the Court has the discretion to

2    allow discovery to help determine whether it has personal jurisdiction, a refusal to allow such

3    discovery "is not an abuse of discretion when it is clear that further discovery would not

4    demonstrate facts sufficient to constitute a basis for jurisdiction."  *Wells Fargo & Co. v. Wells*

5    *Fargo Express Co.,* 556 F.2d 406, 430 (9th Cir. 1977).  Here, there is no additional information

6    that discovery would reveal that would contradict the facts set forth in the Kim Declaration and

7    the Cho Declaration, or reveal any additional information regarding this issue relevant to the state

8    of affairs at the time Maxwell filed its Complaint or Amended Complaint.  Accordingly, NessCap,

9    Inc. respectfully requests that the Court deny Maxwell's request for jurisdictional discovery and

10   grant NessCap, Inc.'s motion and dismiss this action as to NessCap, Inc. for lack of personal

11   jurisdiction.

12                              **III. CONCLUSION**

13           For the reasons set forth above, NessCap, Inc. respectfully requests that this Court grant its

14   Motion to Dismiss.

15   DATED: December 21, 2006          LUCE, FORWARD, HAMILTON & SCRIPPS LLP

16

17                                     By:  s/Callie A. Bjurstrom
                                           Callie A. Bjurstrom
18                                         Michelle A. Herrera
                                           Attorneys for NessCap, Inc.
19

20   DATED: December 21, 2006          EDWARDS ANGELL PALMER & DODGE LLP

21

22                                     By:  s/Brian M. Gaff
                                           George W. Neuner
23                                         Brian M. Gaff
                                           Attorneys for NessCap, Inc.
24

25

26   3774941.2

27

28

                                        9                    Case No. 06CV2311-JAH(BLM)

EXHIBIT 5

1   DAVID C. DOYLE (CA SBN 70690)
    ERIC M. ACKER (CA SBN 135805)
2   E. DALE BUXTON II (CA SBN 222580)
    KATHERINE L. PARKER (CA SBN 222629)
3   MORRISON & FOERSTER LLP
    12531 High Bluff Drive
4   Suite 100
    San Diego, California  92130-2040
5   Telephone: 858.720.5100

6   Attorneys for Plaintiff
    MAXWELL TECHNOLOGIES, INC.

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11   MAXWELL TECHNOLOGIES, INC.,        Case No.   06cv2311-JAH-BLM

12             Plaintiff,           **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF**

13       v.                     **MAXWELL TECHNOLOGIES, INC.'S MOTION FOR**

14   NESSCAP, INC. and NESSCAP CO., LTD.,    **PRELIMINARY INJUNCTION**

15            Defendants.

16                          Date:     November 30, 2006
                                    Time:    3:00 P.M.

17                                     Courtroom:  11
                                    Judge John A. Houston

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Ultracapacitors—advanced energy storage devices with applications including small electronics, hand tools, wind turbines, automobiles, trucks, and buses—are being incorporated across various industries to replace or complement conventional batteries.  Over the past ten years, San Diego-based Maxwell Technologies has invested over $70 million developing innovations in ultracapacitor technology, securing intellectual property protection for these innovations, and creating market demand for ultracapacitors.  Maxwell now faces the possibility of never being able to realize a return on that investment, because Defendant Nesscap is eroding prices and profit margins with below-market priced ultracapacitors that infringe Maxwell's intellectual property.[1]

Maxwell's U.S. Patent No. 6,525,924 ("the '924 patent") and U.S. Patent No. 6,631,074 ("the '074 patent") claim inventions that improve the efficiency and reliability of ultracapacitors.  The '924 patent claims an invention that reduces an ultracapacitor's internal resistance, thereby increasing its effectiveness and life span.  The invention achieves these advantages by replacing what was formerly a stapled junction between two separate metal parts with a single metal component, forming a pathway from the internal electrode to an external terminal.  This continuous pathway facilitates the release of stored energy from the ultracapacitor, and avoids the increased resistance of a stapled junction between two components.  Nesscap's entire line of prismatic ultracapacitors includes this patented feature of a continuous pathway on a single metal component.  These products all infringe the '924 patent, as confirmed by Dr. John R. Miller, a Ph.D. physicist with over 20 years' experience researching and publishing in the field of advanced capacitor technology.

The '074 patent claims an invention that increases the amount of energy a capacitor can store, and at the same time reduces the capacitor's internal resistance.  These advantages are achieved with two aluminum collectors that are coated with two separate coatings of carbon—a

---

[1] All references to "Nesscap" or "Defendant" refer collectively to Nesscap, Inc., a Delaware Corporation, and Nesscap Co., Ltd., a Korean entity owned entirely by Nesscap, Inc.

1    conductive carbon coating and an activated carbon coating.  These two aluminum collectors

2    coated with carbon are then separated by a porous separator.  As Dr. Miller explains, all of

3    Nesscap's electric double layer capacitors include electrodes that meet the limitations of the '074

4    patent, and therefore infringe.

5         Nesscap's infringement of the '924 and '074 patents will have immediate, irreparable

6    impact on Maxwell if not enjoined now.  Nesscap has exhibited a consistent strategy of

7    drastically undercutting Maxwell on price, and has expressly stated to a Maxwell customer that its

8    goal is to "*deliver at a lower price than Maxwell Technologies in all cases*."  Nesscap's pricing

9    tactics have already eroded market prices, thereby reducing, and in some cases eliminating,

10   Maxwell's profit margins.  If Nesscap is enjoined only at the conclusion of this litigation,

11   ultracapacitor prices will never return to current market levels, as customers will have built lower

12   prices into their business models.  Thus, if not enjoined now, Nesscap's pricing tactics will

13   permanently depress or eliminate profit margins in the ultracapacitor industry, thereby preventing

14   Maxwell, and any other ultracapacitor manufacturer, from making a reasonable return on

15   investment.  This infringing conduct, if not stopped, will stifle continued innovation of this

16   cutting-edge technology and potentially drive Maxwell from the market it has pioneered.

17        In light of the clear showing that Nesscap is infringing Maxwell's patents and that this

18   infringement will irreparably harm Maxwell if not enjoined now, Maxwell requests that this

19   Court enter a preliminary injunction to halt Nesscap's infringing U.S. activities.[2]

20   **II.    FACTS**

21        **A.    Ultracapacitors and Their Applications.**

22        Maxwell's '924 patent covers a novel ultracapacitor with decreased internal resistance and

23   methods for making that ultracapacitor.  (A true and correct copy of the '924 Patent is attached as

24   Exhibit M to the Declaration of John R. Miller in Support of Maxwell Technologies' Motion for

---

[2] This motion and the accompanying declarations and exhibits supersede the preliminary
injunction motion filed by Maxwell on October 18, 2006.  That pending motion was rendered
moot by Maxwell's filing of the First Amended Complaint on November 2, 2006, which added
Maxwell's claim for infringement of the '074 patent.  This motion will be heard on the
previously-noticed hearing date, November 30, 2006.

## G.    Nesscap's Competitive Tactics in the United States.

Nesscap recently has sought to substantially expand its presence and distribution of products in the U.S.  Earlier this year, Nesscap entered a relationship with Digi-Key, a U.S.-based national electronics distributor.  (Balanson Decl. ¶ 14.)  Nesscap's ultracapacitors can be purchased in the U.S. on Digi-Key's website at http://dkc1.digikey.com/us/mkt/vendors/589.html. Nesscap also recently has engaged in efforts to raise capital with the express goal of establishing a U.S. headquarters.  (*See id.* ¶ 15 and Ex. A.)  In a prospectus issued regarding a $25 million offering from Nesscap earlier this year, Nesscap touts itself as "one of the four leading developers and manufacturers of ultracapacitors in the world," and states that "Nesscap's headquarters will be based in the New York City area with a world-class executive and sales team and will be responsible for the North America [sic] and European sales and marketing." (*Id.*, Ex. A at 10-11.)

In its recent U.S. marketing efforts, Nesscap is using the same below-market pricing it uses abroad to lure away customers with whom Maxwell has worked for years on marketing and development efforts.  For example, as discussed above, Maxwell spent four years in marketing and development efforts with ISE Corp. before making a commercial sale to ISE.  (Balanson Dec. ¶ 8.)  Maxwell now recognizes approximately $1 million in revenue from ISE's business each year, with expectations of significant growth in the near future.  (*Id.* ¶ 16.)  However, Maxwell recently learned that Nesscap has repeatedly contacted ISE, and ISE procurement personnel are in the process of obtaining price quotes from Nesscap.  (*Id.*)

Similarly, Maxwell lost a contract with DIG Corp., a Vista-based manufacturer of irrigation systems, earlier this year.  DIG's representatives recently explained to Maxwell that Nesscap won this business because it offered prices substantially lower than Maxwell's.  (*See* Declaration of Scot Thompson in Support of Maxwell's Motion for Preliminary Injunction ["Thompson Dec."] at ¶¶ 3-4.)   Also, Maxwell had to lower its prices by up to 25% to win business with Azure Dynamics, a Boston-based maker of hybrid-electric powertrains, in order to beat Nesscap for the account.  (Balanson Dec. ¶ 18.)

In addition to its below-market pricing, Nesscap also ignores government regulations and related costs by shipping its ultracapacitors without declaring them to be hazardous materials.

1    (*See* Balanson Dec. ¶ 19 and Ex. B at 18 ["There are no hazardous materials fees on these

2    parts."].)  Maxwell does ship its ultracapacitors in accordance with regulations for hazardous

3    materials, and for some products this can double the shipping cost that is passed along to the

4    customer.  (*Id.* ¶ 19.)

5    ### III.    LEGAL STANDARD

6        The Patent Act grants Federal Courts the power to enjoin activities which violate "any

7    right secured by patent."  35 U.S.C. § 283.  Because the grant of an injunction under Section 283

8    involves matters unique to patent law, Federal Circuit law governs.  *Hybritech v. Abbott Labs.*,

9    849 F.2d 1446, 1452 n.12 (Fed. Cir. 1988).  The decision to grant or deny a preliminary

10   injunction is based on the district court's assessment of four factors: "the likelihood of the

11   patentee's success on the merits; (2) irreparable harm if the injunction is not granted; (3) the

12   balance of hardships between the parties; and (4) the public interest."  *Oakley, Inc. v. Sunglass

13   Hut Int'l*, 316 F.3d 1331, 1338-39 (Fed. Cir. 2003) (affirming grant of preliminary injunction).

14   No one of these factors is dispositive.  Rather, the Court "must weigh and measure each factor

15   against the other factors and against the form and magnitude of the relief requested."  *Hybritech*,

16   849 F.2d at 1451.  The grant or denial of a preliminary injunction is within the sound discretion of

17   the district court.  *Atari Games Corp. v. Nintendo of America, Inc.*, 897 F.2d 1572, 1575 (Fed.

18   Cir. 1990).

19   ### IV.    ARGUMENT

20   #### A.    Maxwell Has Demonstrated Likelihood of Success on the Merits of its Infringement Claims.

21       Maxwell has a strong likelihood of success on its infringement claims.  First, the '924 and

22   '074 patents are valid.  A patent is entitled to a statutory presumption of validity, and the party

23   attacking validity has the burden of proving by clear and convincing evidence that the patent is

24   invalid.  35 U.S.C. § 282; *see also Applied Materials, Inc. v. Advanced Semiconductor Materials

25   Am., Inc.*, 98 F.3d 1563, 1569 (Fed. Cir. 1996) ("When a patent has been examined and duly

26   granted, judicial review must give due weight to the presumption of validity.").  This presumption

27   exists at every stage of the litigation.  *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d

28

1   **V.   CONCLUSION**

2   Given Maxwell's strong showing of likelihood of success and irreparable harm, the

3   balance of hardships strongly favors Maxwell.  A preliminary injunction preventing further

4   infringement of the '924 and '074 patents is therefore necessary.

5   Dated: November 2, 2006          MORRISON & FOERSTER LLP

6

7

8   By:   /s David C. Doyle
          Attorneys for Plaintiff
          MAXWELL TECHNOLOGIES, INC.

9   Email:  ddoyle@mofo.com

sd-337986

# EXHIBIT 6

**Company**

## Management Team

**William J. Lang**
President, CEO

**Priya Bendale**
VP, Engineering

**Jim Root**
VP, Operations

**Brent R. Barker**
VP, Sales & Marketing

**Matthew K. Thomas**
Controller & CFO

*President, CEO*

Mr. Lang is responsible for the growth and economic condition of the corporation and reports to the Board of Directors and Shareholders.

**Experience:**
Mr. Lang has over 40 years of experience designing and engineering illuminated displays, panels, switches, LCD, and LED modules. He introduced the first Integrated Control Panel, Programmable Display, and Liquid Crystal Dichroic Integrated Display Module.

Mr. Lang was the founder of Symbolic Displays, Inc., an engineering development and manufacturing company specializing in illuminated displays. He developed and received patents in digital display interfaces and component technology.

**Education:**
Bachelor of Science, Business Administration and Advanced Management

**Memberships:**
Bill has had numerous professional accomplishments relative to holding positions of office in professional memberships with involvement in aviation as a pilot.

**Priya Bendale, Ph. D.**
*Vice President, Engineering*

Dr. Bendale is responsible for managing the design, development, and integration of ruggedized display systems for both avionics and land-based military applications. Dr. Bendale reports directly to the president.

**Experience:**
Dr. Priya Bendale has over 18 years experience in advanced technology development. With a background in both program management and Materials Science and engineering, she has successfully organized and directed several research programs from concept to product, some of which have resulted in patents. She has a number of years of display research experience.

**Education:**
PhD in Chemistry/Materials Science

**Memberships:**
Priya is a member of the Materials Research Society (MRS), the Society for

Information Displays (SID) and an active participant in the United States Display
Consortium, Military Avionics Users Group (MAUG).

**Jim Root**
*Vice President, Operations*

Mr. Root is responsible for manufacturing, procurement, manufacturing
engineering test and facilities. Mr. Root reports directly to the president.

**Experience:**
Mr. Root was in the USAF specializing in ground Radar, ECCM and computer data
systems. Jim has over thirty years experience in high technology procurement
and manufacturing both domestic and international. He has worked as a
consultant for several large firms to install and enhance their Manufacturing and
Control Systems.

**Brent R. Barker**
*Vice President, Sales & Marketing*

Mr. Barker is responsible for military and commercial strategy and business
development, producing the corporate marketing plan, achieving the sales
objectives, and managing the internal and external sales force. He reports directly
to the president.

**Experience:**
Mr. Barker joined Interface as the Government Business Development Manager,
having over 24 years experience in the aerospace industry business development
and as a military operational and civilian test pilot (Northrop Corporation) in
design, manufacturing, sales, and marketing within military aircraft markets. LTC
Barker recently retired from the California Air National Guard as a command pilot
for fighter and tanker aircraft.

**Education:**
Bachelor of Science, Business, Miami University, Oxford, Ohio
Northrop Grumman Executive Marketing Program, UCLA, Anderson School
USAF Armed Forces Staff College

**Matthew K. Thomas, CPA**
*Controller & CFO*

Mr. Thomas is responsible for managing the accounting department and the
overall financial condition of the company, and reports directly to the president.

**Experience:**
Matt has over 16 years experience in public accounting, specializing in individual
and corporate income taxation and outsourced controller/CFO services.

**Education:**
Bachelor of Science, Business, University of San Diego
Certified Public Accountant, State of California

**Memberships:**
Matt is an active member of the American Institute of Certified Public Accountants
and the California Society of Certified Public Accountants.

EXHIBIT 7



## ORGANIZATION



EXHIBIT 8




*Enabling Tomorrow's Innovations Today*

Home    About Us    Careers    Contact Us    Contents

Contract News
■ President's Message
Research & Development
Management

*Dear Guest,*

*Welcome to our website.  The last thirty years has seen dramatic improvements in electronic and digital technology.  In many ways energy technology has not kept pace with the remarkable developments in these evolving fields.  Portable electronic devices have become increasingly smaller, while in many instances power demands have dramatically increased.  These increased requirements are fueling a desire for more advanced energy technologies. At Ionix we are striving to develop advanced, innovative energy storage technologies that provide our customers the ability to develop next-generation products that enable tomorrows innovations today.*

*The company has several core technologies that it is leveraging to create advanced system design.  The core competencies include:*

1. *Design and development of advanced electrochemical energy storage systems*
2. *Computer modeling of component and system electrical and thermal performance*
3. *Software-based microcontroller design*
4. *System integration and packaging*

*Today's advanced energy storage systems require not only advances in materials and processes but also requires full integration to create a complete system. Newly developed energy systems such as fuel cells, advanced batteries, or electrochemical capacitor are increasingly requiring sophisticated control systems to fully utilize the advanced technology.*

*Pease feel free to contact me regarding questions about Ionix or this web site at* farahmandi@ionixpower.com.

Sincerely,

*C. Joseph Farahmandi*
*President, Ionix Power Systems*

Home          About Us          Careers          Contact Us          Contents

**Copyright © 2006 Ionix Power Systems, LLC.**
**Last modified: January 02, 2006**

EXHIBIT 9

Case 1:06-cv-00764-GMS    Document 15-2    Filed 02/06/2007    Page 33 of 37

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| DELAWARE | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 2005 | 2004 | 2003 | 2002 | 2001 | 2000 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 1,190 | 1,797 | 1,362 | 2,028 | 1,004 | 1,303 | U.S. | Circuit |
| | Terminations | | 1,448 | 1,516 | 1,507 | 1,478 | 1,020 | 955 | | |
| | Pending | | 1,853 | 2,085 | 1,836 | 1,999 | 1,477 | 1,502 | | |
| | % Change in Total Filings | Over Last Year | | -33.8 | | | | | 91 | 6 |
| | | Over Earlier Years | | | -12.6 | -41.3 | 18.5 | -8.7 | 70 | 5 |
| | Number of Judgeships | | 4 | 4 | 4 | 4 | 4 | 4 | | |
| | Vacant Judgeship Months** | | .0 | .0 | 1.9 | 3.1 | .0 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 298 | 449 | 340 | 507 | 251 | 326 | 81 | 5 |
| | | Civil | 264 | 414 | 306 | 462 | 233 | 307 | 70 | 5 |
| | | Criminal Felony | 28 | 29 | 25 | 38 | 18 | 19 | 91 | 6 |
| | | Supervised Release Hearings** | 6 | 6 | 9 | 7 | - | - | 88 | 4 |
| | Pending Cases | | 463 | 521 | 459 | 500 | 369 | 376 | 26 | 3 |
| | Weighted Filings** | | 422 | 534 | 424 | 516 | 379 | 389 | 59 | 4 |
| | Terminations | | 362 | 379 | 377 | 370 | 255 | 239 | 71 | 4 |
| | Trials Completed | | 20 | 19 | 23 | 18 | 16 | 19 | 44 | 2 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 9.4 | 9.1 | 8.3 | 9.8 | 8.0 | 6.6 | 58 | 1 |
| | | Civil** | 10.9 | 14.0 | 11.2 | 8.2 | 12.6 | 10.9 | 68 | 5 |
| | From Filing to Trial** (Civil Only) | | 23.5 | 26.0 | 24.0 | 22.5 | 21.0 | 24.0 | 47 | 2 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 156 | 65 | 66 | 99 | 77 | 70 | | |
| | | Percentage | 9.1 | 3.4 | 3.9 | 5.4 | 5.5 | 4.9 | 77 | 5 |
| | Average Number of Felony Defendants Filed Per Case | | 1.2 | 1.2 | 1.3 | 1.1 | 1.3 | 1.2 | | |
| | Jurors | Avg. Present for Jury Selection | 39.82 | 38.50 | 34.98 | 33.84 | 32.68 | 35.75 | | |
| | | Percent Not Selected or Challenged | 22.8 | 20.9 | 24.0 | 24.4 | 19.9 | 28.5 | | |

| 2005 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 1055 | 28 | 5 | 252 | 7 | 3 | 36 | 92 | 50 | 149 | 149 | 63 | 221 |

Case 1:06-cv-00764-GMS    Document 15-2    Filed 02/06/2007    Page 34 of 37

| Criminal* | 110 | 1 | 27 | 16 | 23 | 20 | 6 | ** | 5 | 4 | - | 6 | 2 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.

\*\* See "Explanation of Selected Terms."

EXHIBIT 10

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| **CALIFORNIA SOUTHERN** | | | 2005 | 2004 | 2003 | 2002 | 2001 | 2000 | | |
| OVERALL CASELOAD STATISTICS | Filings* | | 6,566 | 7,964 | 8,202 | 8,360 | 6,442 | 6,686 | U.S. | Circuit |
| | Terminations | | 6,694 | 8,034 | 8,106 | 8,191 | 6,393 | 6,579 | | |
| | Pending | | 3,324 | 3,506 | 3,592 | 3,522 | 3,462 | 4,087 | | |
| | % Change in Total Filings | Over Last Year | -17.6 | | | | | | 87 | 14 |
| | | Over Earlier Years | | -20.0 | -21.5 | 1.9 | -1.8 | | 56 | 10 |
| | Number of Judgeships | | 13 | 13 | 13 | 8 | 8 | 8 | | |
| | Vacant Judgeship Months** | | 12.0 | 9.1 | 12.3 | .0 | .0 | .8 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 504 | 612 | 631 | 1,045 | 805 | 836 | 30 | 6 |
| | | Civil | 208 | 219 | 217 | 357 | 327 | 348 | 78 | 10 |
| | | Criminal Felony | 193 | 262 | 274 | 437 | 478 | 488 | 6 | 2 |
| | | Supervised Release Hearings** | 103 | 131 | 140 | 251 | - | - | 2 | 2 |
| | Pending Cases | | 256 | 270 | 276 | 440 | 433 | 511 | 83 | 11 |
| | Weighted Filings** | | 387 | 481 | 478 | 785 | 724 | 726 | 67 | 10 |
| | Terminations | | 515 | 618 | 624 | 1,024 | 799 | 822 | 30 | 6 |
| | Trials Completed | | 29 | 25 | 23 | 40 | 44 | 55 | 13 | 3 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 4.2 | 3.3 | 3.3 | 3.8 | 4.0 | 3.7 | 2 | 1 |
| | | Civil** | 6.3 | 6.9 | 6.5 | 6.4 | 6.9 | 7.5 | 4 | 1 |
| | From Filing to Trial** (Civil Only) | | 25.4 | 30.0 | 23.5 | 21.0 | 24.0 | 26.0 | 56 | 4 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 138 | 97 | 94 | 92 | 68 | 38 | | |
| | | Percentage | 7.1 | 4.7 | 4.4 | 4.3 | 3.5 | 2.0 | 66 | 8 |
| | Average Number of Felony Defendants Filed Per Case | | 1.1 | 1.1 | 1.1 | 1.1 | 1.1 | 1.1 | | |
| | Jurors | Avg. Present for Jury Selection | 58.66 | 59.13 | 55.51 | 58.29 | 58.31 | 35.52 | | |
| | | Percent Not Selected or Challenged | 44.5 | 44.5 | 45.3 | 44.3 | 45.9 | 45.7 | | |

| 2005 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 2708 | 87 | 52 | 941 | 84 | 42 | 69 | 235 | 143 | 162 | 592 | 5 | 296 |

Case 1:06-cv-00764-GMS    Document 15-2    Filed 02/06/2007    Page 37 of 37

| Criminal* | 2505 | 650 | 233 | 1360 | 8 | 178 | 15 | 5 | 2 | 1 | 25 | 8 | 20 |
|-----------|------|-----|-----|------|---|-----|----|----|----|----|----|----|----|

\*   Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."