IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF DELAWARE

|  |  |
|---|---|
| NESSCAP CO., LTD., | |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | Civil Action No.: 1:06-cv-00764-GMS |
| MAXWELL TECHNOLOGIES, INC. | |
| Defendant. | |

**NESSCAP CO., LTD.'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a)**

Denise Seastone Kraft (DE No. 2778)
EDWARDS ANGELL PALMER & DODGE LLP
919 North Market Street
Wilmington, DE 19801
(302) 777-7770
(302) 777-7263 (fax)

George W. Neuner (*Of the Massachusetts Bar*)
Brian M. Gaff (*Of the Massachusetts Bar*)
EDWARDS ANGELL PALMER & DODGE LLP
101 Federal Street
Boston, MA 02110
(617) 439-4444
(617) 439-4170 (fax)

*Attorneys for Plaintiff NessCap Co., Ltd.*

Dated: February 23, 2007

## TABLE OF CONTENTS

I.    NATURE AND STAGE OF THE PROCEEDING.................................................. 1

II.    SUMMARY OF THE ARGUMENT ................................................................. 2

III.    STATEMENT OF FACTS ................................................................................. 2

IV.    ARGUMENT ..................................................................................................... 7

    A.    Plaintiff's Choice Of Forum Should Not Be Disturbed............................. 7

    B.    The Balance Of Interests Does Not Favor Transfer.................................... 8

        1.    The Private Interests Favor Keeping This Case in Delaware ......... 8

            a.    Convenience of the Parties........................................................ 8

            b.    Convenience of the Witnesses ................................................. 9

            c.    Location of Records ................................................................ 13

        2.    The Public Interests Favor Keeping This Case in Delaware ........ 14

            a.    Practical Considerations That Could Facilitate Trial............. 14

            b.    Relative Administrative Efficiency ....................................... 16

            c.    The Local Interest ................................................................. 17

V.    CONCLUSION................................................................................................ 17

## **TABLE OF AUTHORITIES**

**Cases**

*Adams v. Crowley,*
  No. 04-1565-SLR, 2005 WL 1240181 (D. Del. May 25, 2005)................................. 13

*ADE Corp. v. KLA-Tencor Corp.,*
  138 F. Supp. 2d 565, 572 (D. Del. 2001)..................................................................... 17

*Asten Inc. v. Weavexx Corp.,*
  No. 99-583-GMS, 2000 WL 1728354 (D. Del. Feb. 11, 2000)............................. 12, 14

*BAE Systems Aircraft Controls Inc. v. Eclipse Aviation Corp.,*
  224 F.R.D. 581 (D. Del. 2004). ............................................................................... 9, 11

*Bering Diagnostics GmbH v. Biosite Diagnostics, Inc.,*
  No. 97-501-MMS, 1998 WL 24354 (D. Del. Jan. 6, 1998)......................................... 16

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,*
  821 F. Supp. 962 (D. Del. 1993)................................................................................... 9

*Jefferson Ward Stores, Inc. v. Doody Co.,*
  560 F. Supp. 35 (E.D. Pa. 1983). ............................................................................... 14

*Jumara v. State Farm Insurance Co.,*
  55 F.3d 873 (3rd Cir. 1995). ......................................................................................... 8

*Schering Corp. et al. v. Amgen, Inc.,*
  969 F. Supp. 258 (D. Del. 1997)..................................................................... 10, 13, 17

*Shutte v. Armco Steel Corp.,*
  431 F.2d 22 (3rd Cir. 1970). ......................................................................................... 7

*Textron Innovations, Inc. v. The Toro Co.,*
  No. 05-486-GMS, 2005 WL 2620196 (D. Del. Oct. 14, 2005). ......................... 7, 12, 17

*Truth Hardware Corp. v. Ashland Products, Inc.,*
  No. 02-1541-GMS, 2003 WL 118005 (D. Del. Jan. 13, 2003). ............................. 10, 16

*Waste Distillation Technology, Inc. v Pan American Resources, Inc.,*
  775 F. Supp. 759 (D. Del. 1991)................................................................................ 7, 16

*Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.,*
  157 F.R.D. 215 (D. Del. 1993). ................................................................................... 9

**Statutes**

## I.    <u>NATURE AND STAGE OF THE PROCEEDING</u>

This is a patent infringement action brought by Plaintiff NessCap Co., Ltd. ("LIMITED") against Maxwell Technologies, Inc. ("Maxwell"), a Delaware corporation. LIMITED filed this action on December 14, 2006, alleging that Maxwell infringes LIMITED's U.S. Patent No. 6,743,544. On January 3, 2007, Maxwell filed its Answer and Counterclaims for invalidity and noninfringement. LIMITED replied to Maxwell's Counterclaims on January 23, 2007.

On February 6, 2007, Maxwell filed a Motion to Transfer this action to U.S. District Court for the Southern District of California in San Diego where Maxwell previously had filed a patent infringement suit against LIMITED and its Delaware parent company, NessCap, Inc.

Maxwell's instant motion was brought improperly before this Court because Maxwell filed it without arranging for a prior meet and confer pursuant to D. Del. L.R. 7.1.1. Nevertheless, LIMITED agreed not to require Maxwell withdraw and refile the motion after compliance with the local rules in return for extending the time for opposing the motion.

The patents at issue and the accused products in the San Diego action are different from those in the instant case. Indeed, the U.S. Patent Office has classified the patent-in-suit in this action in "Class 429," which relates to "Chemistry: Electrical Current Producing Apparatus, Product, and Process." In contrast, the Patent Office has placed the patents at issue in the San Diego action in "Class 361," which relates to "Electricity: Electrical Systems and Devices." Also, LIMITED and NessCap, Inc. filed Motions to Dismiss the San Diego action, which are currently pending before the San Diego court.

1

As described below, LIMITED and NessCap, Inc. have filed – but not served – a second lawsuit against Maxwell in this Court. This second lawsuit is inactive and will remain so unless the San Diego court dismisses the action pending there.

## II.    SUMMARY OF THE ARGUMENT

1.    LIMITED's choice to bring the instant action in Delaware is based on rational and legitimate reasons and should not be disturbed.

2.    Maxwell presents no compelling evidence showing that the Southern District of California is more convenient to the parties and witnesses compared to Delaware. Maxwell is a Delaware corporation with an international customer base and international operations. The two party witnesses that Maxwell identified are located in Switzerland and could travel to Delaware without difficulty. Of the two potential party witness that LIMITED identified, one resides in South Korea but regularly travels to the east coast of the United States, and the other resides in New York, making Delaware a convenient forum for this action. Further, Maxwell does not suggest that any documents that may exist at Maxwell's facilities in San Diego or in Switzerland could not be produced in Delaware.

3.    Maxwell's weak evidence of judicial economy, docket congestion, and a purported local interest in litigating this matter in San Diego falls far short of outweighing LIMITED's reasonable choice to litigate this matter in Delaware.

## III.    STATEMENT OF FACTS

LIMITED is the wholly owned subsidiary of NessCap, Inc., which is a Delaware corporation. LIMITED is a company located only in South Korea and organized under Korean law. It is engaged in the research, development, production, and sales of

2

electrical energy storage products known as "ultracapacitors." LIMITED was formed on May 1, 2001 as a spin-off from Ness Corporation, which was formed in August 1999 to continue work started at the New Energy Storage System Center ("NESS") at the Institute of Advanced Engineering, a central R&D Center founded by Daewoo Group in August 1998. *See* Declaration of Sunwook Kim, Ph.D. ("Kim Declaration"), ¶¶ 4-7, filed concurrently herewith.

An ultracapacitor is a new alternative type of energy storage device. As compared to batteries, ultracapacitors provide up to one hundred times the power, operate reliably under extreme temperature conditions (i.e., - 40°C to 60°C), last a very long time with little or no maintenance, and are environment friendly. These robust characteristics make the ultracapacitor an ideal solution for an assortment of applications ranging from power quality, solar applications, portable telecom, and electronics, to automotive applications. The ultracapacitor also is considered to be a key component for achieving fuel-efficient and "green" cars of the future.

Maxwell is a Delaware corporation. Its headquarters is in San Diego, California and it has office and manufacturing facilities in Rossens, Switzerland. Balanson Declaration, D.I. 14, ¶ 3. Maxwell entered the ultracapacitor market in the early to mid 1990's and has sold over $35 million of its BOOSTCAP® ultracapacitor products in the last three years. Balanson Declaration, D.I. 14, ¶¶ 5-6. According to Maxwell's 2005 Annual Report, its 2005 revenue exceeded $45 million, with 55% of that total generated from customers located outside of the United States. *See* Declaration of Brian M. Gaff ("Gaff Declaration"), Ex. 1 at 14, filed concurrently herewith. Indeed, in 2003 Maxwell formed a manufacturing and marketing alliance with Yeong-Long Technologies, which

3

has facilities in Taiwan and in mainland China, to "accelerate commercialization" of its BOOSTCAP® ultracapacitors in China. *See* Maxwell's 2005 Annual Report at 9 (Gaff Declaration, Ex. 1).

LIMITED filed the instant action on December 14, 2006 and contends that Maxwell's BOOSTCAP® ultracapacitors infringe LIMITED's U.S. Patent No. 6,743,544 ("the patent-in-suit"). On January 3, 2007, Maxwell filed its Answer and Counterclaims for invalidity and noninfringement. In its Answer, Maxwell identified U.S. Patent Nos. 5,862,035 and 5,907,472 and alleged that LIMITED's failure to cite these patents during the prosecution of the patent-in-suit is the basis for its affirmative defense of unenforceability due to inequitable conduct. Answer, D.I. 7, ¶¶ 18-19. Maxwell's Answer does not include any allegations that these patents invalidate the patent-in-suit.

Maxwell's Motion to Transfer relies heavily on a lawsuit that it filed in the Southern District of California (San Diego) on October 17, 2006 (case no. 3:06-cv-02311-JAH-BLM). Maxwell's reliance is misplaced because that lawsuit has no relation to the instant action. Indeed, in its First Amended Complaint in the San Diego action, Maxwell alleges that unspecified LIMITED products infringe of its U.S. Patent Nos. 6,525,924 and 6,631,074.[1] Maxwell's contention that the patent-in-suit in the instant action "will be asserted as invalidating prior art in the San Diego action" is simply wrong. Maxwell's Motion to Transfer, D.I. 13, at 5. Even the most casual reading of the patent-in-suit reveals that, by virtue of its filing and issue dates, it is <u>not</u> prior art to either U.S. Patent No. 6,525,924 or 6,631,074. Maxwell's allegation that LIMITED's press release

---

[1] In subsequent pleadings, Maxwell alleged that LIMITED's "prismatic" ultracapacitors infringe U.S. Patent No. 6,525,924, and that all of LIMITED's ultracapacitors infringe U.S. Patent No. 6,631,074.

of December 15, 2006[2] states that LIMITED will assert the patent-in-suit in the San Diego action mischaracterizes the press release. Indeed, the press release does not list any patent numbers and refers only to unspecified LIMITED patents that predate U.S. Patent Nos. 6,525,924 or 6,631,074, and the patent-in-suit does not meet this requirement. Maxwell is engaging in wholesale misrepresentation by attempting to link the patent-in-suit with the San Diego action by using this press release.

Instead of filing an Answer to Maxwell's First Amended Complaint in the San Diego action, LIMITED and its Delaware parent NessCap, Inc. availed themselves of their rights under Fed. R. Civ. P. 12 and each filed Motions to Dismiss for insufficient service and, in the case of the parent NessCap, Inc., lack of personal jurisdiction as well. The briefing on these Motions is complete and they are currently pending before Judge John A. Huston in San Diego District Court. Judge Houston has chosen to rule on these Motions without oral argument, and the parties are currently waiting for his ruling.

Also pending before Judge Houston is Maxwell's Motion for a Preliminary Injunction ("Maxwell's Motion"). On two occasions, LIMITED and its parent NessCap, Inc. have requested continuances of the hearing on Maxwell's Motion to allow the San Diego court to rule on the Motions to Dismiss before it confronts Maxwell's Motion. Over Maxwell's opposition, the San Diego court granted both continuances and initially rescheduled the hearing for March 1, 2007. Pursuant to Judge Houston's order of January 26, 2007,[3] LIMITED filed its Opposition to Maxwell's Motion on February 1, 2007 under seal. Judge Houston has ordered that the San Diego court would unseal LIMITED's Opposition and provide it to Maxwell only if LIMITED's and NessCap,

---

[2] Kramer Declaration, D.I. 15, Ex. 1.
[3] Gaff Declaration, Ex. 2.

Inc.'s Motions to Dismiss are denied, from which point Maxwell will have seven days to file a reply to the Opposition. Consequently, the briefing on Maxwell's Motion is currently incomplete. Also, on February 21, the San Diego court, on its own motion, again rescheduled the hearing to March 8, 2007. Gaff Declaration, Ex. 3. Consequently, and in contrast to Maxwell's assertions, by the time the motion at bar is fully briefed (i.e., on Maxwell's filing of a reply brief, if any, by the March 1 deadline), it is unlikely that the San Diego court will have invested time analyzing the issues in that action because briefing would not have been completed in that action.

On January 18, 2007, LIMITED and its Delaware parent NessCap, Inc. filed – but have not served – a Complaint against Maxwell in this Court for a declaratory judgment of invalidity and noninfringement of the patents at issue in the San Diego action (i.e., U.S. Patent Nos. 6,525,924 and 6,631,074) (case no. 1:07-cv-00035-GMS; "the DJ action"). LIMITED and its parent NessCap, Inc. filed the DJ action in the event that the San Diego court dismisses the action there pursuant to the pending Motions to Dismiss. In the event of a dismissal, an actual and justiciable controversy between the parties regarding these two patents would remain, and LIMITED and its parent NessCap, Inc. would seek to clear the air on this issue by serving its Complaint and adjudicating the matter in this Court. On the other hand, should the San Diego court not dismiss the action pending there, LIMITED and its parent NessCap, Inc. would not pursue the DJ action in this Court. In any event, the DJ action is currently inactive. Its only relation to the instant action is that both cases name the same defendant and have one plaintiff – LIMITED – in common.

IV.  **ARGUMENT**

A.  **Plaintiff's Choice Of Forum Should Not Be Disturbed**

LIMITED's reasons for choosing Delaware as the forum for this action are both rational and legitimate: Maxwell is incorporated in Delaware and LIMITED's parent NessCap, Inc., although not a party to this action, is incorporated in Delaware as well.  It is inappropriate to disregard a plaintiff's choice of forum where it has a rational and legitimate reason for choosing the forum, and Maxwell's incorporation in Delaware is a rational and legitimate reason for LIMITED to sue it in Delaware.  *Textron Innovations, Inc. v. The Toro Co.*, No. 05-486-GMS, 2005 WL 2620196, at \*2 (D. Del. Oct. 14, 2005) (copy attached hereto as Appendix A).

The change of venue statute provides: "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  When considering a motion to transfer pursuant to this statute, the Third Circuit has held that "[i]t is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice '\* \* \* should not be lightly disturbed.'"  *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3rd Cir. 1970) (citation omitted).  "It is the movant's burden to establish the need to transfer, and 'the plaintiff's choice of venue [will] not be lightly disturbed.'"  *Textron*, 2005 WL 2620196, at \*1 (citation omitted).  Textron held that "unless the balance of convenience strongly favors a transfer in favor of defendant, the plaintiff's choice of forum should prevail."  *Id.* See also, *Waste Distillation Technology, Inc. v. Pan American Resources, Inc.*, 775 F.

7

Supp. 759, 762 (D. Del. 1991) (movant "bears the burden of proving that justice requires a substitute forum and a transfer is not to be liberally granted").

When considering a motion to transfer, courts construing § 1404(a) employ a "multi-factor balancing test" that incorporates the statutory criteria and certain private and public interests. *Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 875 (3rd Cir. 1995). The private interests include the plaintiff's choice of forum, the defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indication by their physical and financial condition, the convenience of the witnesses, and the location of documents. The public interests include the enforceability of judgments, practical considerations that could facilitate trial, the relative administrative efficiency of the two fora, the local interest in deciding local controversies at home, and the public policies of the fora. *Id.* at 879. None of these factors support the relief requested in the instant motion.

**B.    The Balance Of Interests Does Not Favor Transfer**

**1.    The Private Interests Favor Keeping This Case in Delaware**

Maxwell argues that the balance of private interests favors transferring this case to the Southern District of California because certain individuals that may be called as witnesses reside in the San Diego area and because its records regarding the accused devices are in San Diego. The bases of Maxwell's argument are insufficient to warrant transfer of this action.

**a.    Convenience of the Parties**

Maxwell is a Delaware corporation. "By incorporating in Delaware, it can be assumed that [Maxwell] desired the benefits it believed Delaware provides to chartered corporations ... and should not now complain that another corporation has decided to sue

[it] in Delaware." *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 821 F. Supp. 962, 965 (D. Del. 1993). Further, Maxwell is not a local or regional business; indeed, it is publicly traded on the NASDAQ (symbol MXWL) and "sells products around the world." Balanson Declaration, D.I. 14, ¶ 11. Maxwell's interests, activities, sales, and marketing extend well beyond the Southern District of California and the United States as a whole. *See, e.g.,* Maxwell's 2005 Annual Report at 9-10 (Gaff Declaration, Ex. 1) (describing Maxwell's direct and allied facilities in Switzerland, Taiwan, and China, and its sales and marketing activities in Asia, Europe, and North America). For a company that is engaged in such far-flung activities, the convenience of the parties factors are entitled to little or no weight. *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 218 (D. Del. 1993). Also, Maxwell has already answered this lawsuit, filed counterclaims in Delaware District Court, and, having waited almost two months after being served with the Complaint, filed the motion at bar, all of which indicates a willingness to litigate in this forum. *See BAE Systems Aircraft Controls Inc. v. Eclipse Aviation Corp.*, 224 F.R.D. 581, 589 (D. Del. 2004) (denying a motion to transfer, the court states "the parties have taken significant steps to further the instant litigation in the District Court of Delaware. Eclipse answered its complaint and filed the motion at bar ... [t]ransfer of venue to New Mexico will delay the litigation.").

### b.    Convenience of the Witnesses

Maxwell's balance of convenience arguments regarding witnesses should carry little weight with this Court. With respect to potential third-party witnesses, Maxwell has identified only two individuals, Dr. Priya Bendale and Mr. C. Joseph Farahmandi, both of whom are former Maxwell employees. Memorandum, D.I. 13 at 9-10. Maxwell points out that Dr. Bendale is the lead inventor named on one of the patents at issue in the San

Diego action (U.S. Patent No. 6,631,074), but this is wholly irrelevant to the instant case, since an entirely different patent and different products are at issue here. As for Mr. Farahmandi, Maxwell identified two patents on which he is a named inventor to support its affirmative defense of unenforceability due to inequitable conduct, but Mr. Farahmandi's status as a named inventor clearly has no relevance to this issue. Maxwell further states that Dr. Bendale and Mr. Farahmandi are knowledgeable regarding prior art to the patent-in-suit, but fails to assert that these are the only individuals capable of testifying on this issue. Indeed, Maxwell cannot make such an assertion, particularly since Dr. Bendale shares the inventorship of her patent with four other individuals, and Mr. Farahmandi shares his inventorship with three other individuals. Presumably, one or more of these seven other named inventors, as well as any independent expert[4] that Maxwell retains for this case, could provide testimony regarding prior art to the patent-in-suit, if necessary.

Even if Dr. Bendale or Mr. Farahmandi, or some other unnamed third parties, are important in this case, concerns about these witnesses are premature. Dispositive pretrial motions and/or document discovery could make their testimony irrelevant or cumulative. If a third party's testimony is in fact required at trial, this Court has held that a flight to Delaware is not an onerous task warranting transfer. *Truth Hardware Corp. v. Ashland Products, Inc.*, No. 02-1541-GMS, 2003 WL 118005, at *2 (D. Del. Jan. 13, 2003) (copy attached hereto as Appendix B). Further, to facilitate the participation of the third-party, any such testimony could be introduced by videotape deposition. *See Schering Corp. et*

---

[4] Maxwell has retained Dr. John R. Miller of JME, Inc. in Ohio as its technical expert for its Motion for Preliminary Injunction in the San Diego action. Should Maxwell rely on Dr. Miller in this action, it will likely be more convenient for him to travel from Ohio to Delaware than from Ohio to California.

*al. v. Amgen, Inc.*, 969 F. Supp. 258, 269 (D. Del. 1997) (denying defendant's motion to transfer because a third-party witness' videotaped deposition was sufficient). *See also, BAE Systems*, 224 F.R.D. at 589 ("[D]iscovery will be conducted at locations convenient to the parties and their employees. The only event that will take place in Delaware is trial."). Certainly, in the interest of convenience, LIMITED does not object to taking videotape depositions of third-party witnesses in California.

Maxwell fails to acknowledge certain other third-party witnesses who are located outside of the Southern District of California. For example, the law firm that prosecuted the patent-in-suit for LIMITED is Rabin & Berdo, P.C., which is located in Washington, D.C. Gaff Declaration, Ex. 4. In view of Maxwell's allegation of inequitable conduct on LIMITED's part, the testimony of one or more of the attorneys in this firm will be relevant. Clearly, it is more convenient for the attorneys in this firm to travel from Washington, D.C. to Delaware than to San Diego.

According to Maxwell, the accused products in this lawsuit were "invented by a team of Maxwell employees based in Switzerland." Memorandum, D.I. 13 at 12. Indeed, Maxwell identifies only two employees as potential witnesses in this case, Mr. Adrian Schneuwly and Mr. Roland Gallay, both of whom reside in Switzerland. *See* Schneuwly Declaration, D.I. 16; Gallay Declaration, D.I. 17. Mr. Schneuwly and Mr. Gallay both state that their respective travel to Delaware would be "inconvenient." Schneuwly Declaration, D.I. 16, ¶ 8; Gallay Declaration, D.I. 17, ¶ 8. Nevertheless, Mr. Schneuwly and Mr. Gallay both make regular trips from Switzerland to the west coast of the United States to visit Maxwell's headquarters in San Diego. Schneuwly Declaration, D.I. 16, ¶ 4; Gallay Declaration, D.I. 17, ¶ 4. It is inconceivable that travel from

Switzerland to the east coast of the United States for trial in Delaware presents these witnesses with any real difficulty, particularly in view of the frequency of the witnesses' trips to San Diego ("approximately four times per year"[5]).

In any event, Maxwell's strained argument regarding the inconvenience that Mr. Schneuwly and Mr. Gallay would purportedly suffer is irrelevant, because this Court has repeatedly held that the convenience of party witnesses or witnesses who are employed by a party carries no weight in the "balance of convenience" analysis, because "the parties are obligated to procure their attendance at trial." *Asten Inc. v. Weavexx Corp.*, No. 99-583-GMS, 2000 WL 1728354, at *4 (D. Del. Feb. 11, 2000) (copy attached hereto as Appendix C). Maxwell also fails to suggest that the knowledge of these two potential witnesses is unique and not cumulative. *See Textron*, 2005 WL 2620196, at *3 ("Toro has not asserted that the identified witnesses are the only individuals capable of testifying as to the technology of the accused products."). Indeed, while Maxwell remarks[6] that Mr. Schneuwly and Mr. Gallay are named inventors on one of the patents at issue in the San Diego action (U.S. Patent No. 6,525,924) – a fact that is irrelevant to the instant case – it fails to note that two other individuals are also listed as inventors. Presumably, at least one of these other named inventors, or at least one other unnamed member of the "team of Maxwell employees based in Switzerland" responsible for inventing the accused products could provide testimony regarding the accused products, if necessary.

At this point, LIMITED has identified two individuals as potential witnesses: Dr. Sunwook Kim, the founder and Chairman of LIMITED and President of its Delaware

---

[5] Balanson Declaration, D.I. 14, ¶ 3.
[6] Memorandum, D.I. 13 at 11-12.

parent NessCap, Inc., and Dr. Hyun Jin Song, LIMITED's U.S. Operations Project Manager. In addition to providing testimony about LIMITED's business operations, Dr. Kim is a named inventor on the patent-in-suit, and will be able to provide testimony regarding the invention claimed in the patent. Although Dr. Kim resides in South Korea, he regularly travels to the east coast of the United States. *See* Kim Declaration, ¶¶ 2, 4, 6-11. Dr. Song, who can provide testimony regarding LIMITED's U.S. activities, resides in New York and regularly travels to New Jersey, Washington, D.C., and Michigan. *See* Declaration of Hyun Jin Song, Eng.Sc.D. ("Song Declaration"), ¶¶ 2, 5, 6, filed concurrently herewith.

### c.     Location of Records

Courts in this District have noted that "in the modern, spare-no-expense world of well-heeled companies involved in patent litigation, transferring documents from the west coast to Delaware poses no large obstacle." *Schering Corp.*, 969 F. Supp. at 269. That is the case here and, in fact, Maxwell "does not suggest that its documents could not be produced in Delaware. Accordingly, this factor does not weigh in favor of the transfer." *Textron,* 2005 WL 2620196, at *2. Moreover, it is common practice in patent litigation – like other forms of complex federal litigation – that physical documents are no longer shipped across country, but are instead optically scanned with the corresponding document images stored on CDs or DVDs. It is these CDs or DVDs – not boxes of documents – that are produced among counsel. Consequently, the Court should accord no weight to this factor. *See Adams v. Crowley,* No. 04-1565-SLR, 2005 WL 1240181, at *2 n.4 (D. Del. May 25, 2005) (denying motion to transfer, noting, "[d]ocument production may well be in electronic format.") (copy attached hereto as Appendix D).

13

### 2.    The Public Interests Favor Keeping This Case in Delaware

Maxwell, in its Memorandum, persists in improperly characterizing the San Diego action as the "first-filed" action. Although Maxwell filed its San Diego action before the instant action, the San Diego action involves different issues, different patents, and different products. Maxwell's attempts to ascribe priority to the San Diego action over the instant action by sprinkling the "first-filed" phrase throughout its Memorandum, by referring to the first-filed rule, and by stating that both actions involve the same patents – a complete falsehood – are wholly disingenuous.

As of the filing of this pleading, Judge Houston in the San Diego court has not yet ruled on LIMITED's and its Delaware parent NessCap, Inc.'s Motions to Dismiss. Consequently, the San Diego court has not yet obtained jurisdiction of the parties. In this circumstance, at least one court has ruled that even when the concurrent actions involve the same issues – which is <u>not</u> the case here – the later filed action should be allowed to proceed. *Asten*, 2000 WL 1728354, at *3 n.3 (citing *Jefferson Ward Stores, Inc. v. Doody Co.*, 560 F. Supp. 35, 37 (E.D. Pa. 1983)).

### a.    Practical Considerations That Could Facilitate Trial

As described above, and in contrast to Maxwell's assertions, LIMITED's patent-in-suit in this action is unrelated to Maxwell's patents at issue in the San Diego action. Indeed, the subject matter of the patent-in-suit in this action is sufficiently different from that of the patents at issue in the San Diego action such that the U.S. Patent Office has placed the patent-in-suit in a different classification. Specifically, the face of the patent-in-suit in this action indicates that the Patent Office has classified the patent as a member of "Class 429," which relates to "Chemistry: Electrical Current Producing Apparatus,

14

Product, and Process." The patents at issue in the San Diego action are members of "Class 361," which relates to "Electricity: Electrical Systems and Devices."

LIMITED has not implicated the patent-in-suit in the San Diego action. Notwithstanding Maxwell's claim to the contrary, the patent-in-suit is not prior art to Maxwell's patents at issue in the San Diego action. Accordingly, Maxwell's contention that the San Diego court will be required to perform its own claim construction of the patent-in-suit in this action is baseless.

The products accused of infringement in this action and in the San Diego action are different as well. In this action, LIMITED accuses Maxwell's BOOSTCAP® ultracapacitor products of infringement. In the San Diego action, Maxwell accuses all of LIMITED's ultracapacitor products of infringement. Given the differences between the products and the unrelated patents at issue in both actions, the issues in the instant case will be significantly different. Accordingly, transferring this action to San Diego will not result in any potential savings in judicial economy.

Maxwell speculates that by the time the motion at bar is fully briefed the San Diego court will have invested significant time learning the subject matter and issues of that case, thereby warranting transfer of the instant action. Memorandum, D.I. 13 at 14-15. As discussed above, the subject matter and issues of this case are different, so whatever the San Diego court may have learned from the parties' filings there will be largely inapplicable here. Maxwell's speculation as to the investment of the San Diego court ignores the fact that the relevant briefing in the San Diego action will not be completed until after the instant Motion for Transfer is fully briefed, which suggests that Maxwell overstates the extent of the investment. Nevertheless, even if the San Diego

15

court familiarizes itself with ultracapacitor technology in general, "the present court is amply qualified to likewise familiarize itself." *Truth Hardware Corp. v. Ashland Products, Inc.*, No. 02-1541-GMS, 2003 WL 118005, at *1 (D. Del. Jan. 13, 2003) (copy attached hereto as Appendix E). Of course, if the San Diego court dismisses the action there, most, if not all, of the purported advantages of proceeding with this action there that Maxwell's identifies will evaporate.

### b.    Relative Administrative Efficiency

Maxwell suggests that there is less docket congestion in the Southern District of California compared to this District, thereby favoring transfer. Memorandum, D.I. 13 at 15-16. Maxwell paints an incomplete picture. As an initial matter, this Court is well known for its ability to manage its docket and expeditiously resolve complicated patent infringement disputes. *See, e.g., Bering Diagnostics GmbH v. Biosite Diagnostics, Inc.*, No. 97-501-MMS, 1998 WL 24354, at *7 (D. Del. Jan. 6, 1998) (copy attached hereto as Appendix F).

Maxwell cites case law that stands for the proposition that transfer is not warranted when the parties would receive a faster disposition of their claims in Delaware compared to the transferee district. Memorandum, D.I. 13 at 16 (citing *Waste Distillation*, 775 F. Supp. at 767). This is the precise situation in the instant case. Indeed, Maxwell's own statistics show that median time from filing to trial of civil cases is 23.5 months in this Court and 25.4 months in the Southern District of California. Kramer Declaration, D.I. 15, Exs. 9, 10. Further, cost of trial will be an important factor in this case since, like most patent suits, this will be a complex case. When considering the cost of trial, it is clear that this is the proper Court in which to resolve this dispute, because "there is a direct correlation between how many months it takes to get the case to

trial and the overall expense of the litigation, without regard to whether the case is tried on a company's home turf or three thousand miles away." *ADE Corp. v KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 572 (D. Del. 2001).

### c.    The Local Interest

Maxwell presents an overly parochial argument that the location of its headquarters and two of its customers in or near San Diego somehow define the instant case as a local controversy that should be decided on Maxwell's home turf. As an initial matter, "it is well settled that patent rights are not considered state or local matters and do not implicate local interests." *Textron,* 2005 WL 2620196, at *3. Further, it is inappropriate to characterize this dispute as a local San Diego controversy given that (i) LIMITED and Maxwell are incorporated outside of California (in South Korea[7] and Delaware, respectively), (ii) the parties manufacture their products around the world (including in Korea[8], Switzerland[9], and China[10]), and (iii) the accused products were invented in Switzerland. Memorandum, D.I. 13 at 12. Indeed, where, as here, the accused infringer is incorporated in Delaware and sells accused products worldwide, the District Court located near its corporate headquarters does not have a significantly greater interest in the controversy than Delaware. *Schering Corp.*, 969 F. Supp. at 269.

### V.    CONCLUSION

LIMITED brought this case in the District of Delaware for legitimate and practical reasons. All parties are subject to personal jurisdiction in Delaware, this Court

---

[7] LIMITED's parent, NessCap, Inc., is incorporated in Delaware.
[8] Kim Declaration, ¶ 4.
[9] Balanson Declaration, D.I. 14, ¶ 3.
[10] Maxwell's 2005 Annual Report at 9-10 (Gaff Declaration, Ex. 1).

has experience in patent matters, the Defendant and LIMITED's parent are incorporated in Delaware, there is no risk of inconsistent rulings on the same patents in different fora, this Court is familiar with the patent laws, has considerable experience managing complex patent cases, and has an efficient docket that can assure quick dispute resolution. Maxwell's private and public interest arguments are a concoction of conclusory allegations that do not come close to tilting the balance away from the presumption in favor of Plaintiff's chosen forum. For the above reasons, LIMITED respectfully urges the Court to deny the Motion to Transfer and retain this action against Maxwell in Delaware.

Dated: February 23, 2007

                                       Respectfully submitted,

                                         EDWARDS ANGELL PALMER & DODGE LLP

                                         Denise Seastone Kraft (DE No. 2778)
                                         919 North Market Street
                                         Wilmington, DE  19801
                                         (302) 777-7770
                                         (302) 777-7263 (fax)

                                         *Attorneys for NessCap Co., Ltd.*

**OF COUNSEL:**

George W. Neuner (*Of the Massachusetts Bar*)
Brian M. Gaff (*Of the Massachusetts Bar*)
EDWARDS ANGELL PALMER & DODGE LLP
101 Federal Street
Boston, MA 02110
(617) 439-4444
(617) 439-4170 (fax)

BOS2_593613.1

19

## CERTIFICATE OF SERVICE

I, Denise Seastone Kraft, hereby certify that on February 23, 2007, the attached **Brief In Response To Defendant's Motion To Transfer Venue To The United States District Court For The Southern District Of California Pursuant To 28 U.S.C. § 1404(a)** was served on the following persons and was electronically filed with the Clerk of the Court using CM/ECF:

**VIA HAND DELIVERY**

Josy W. Ingersoll, Esq.
John W. Shaw, Esq.
Karen E. Keller, Esq.
Young Conaway Stargatt & Taylor LLP
1000 West Street
Brandywine Building, 17th Floor
Wilmington, DE 19801

**VIA U.S. FIRST CLASS MAIL**

David C. Doyle, Esq.
Brian M. Kramer, Esq.
Morrison & Foerster LLP
12531 High Bluff Drive
Suite 100
San Diego, CA 92130

Denise Seastone Kraft (DE No. 2778)

20

# APPENDIX A

Westlaw.

Not Reported in F.Supp.2d                                                        Page 1
Not Reported in F.Supp.2d, 2005 WL 2620196 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Briefs and Other Related Documents
Textron Innovations, Inc. v. The Toro Co.D.Del.,2005.Only the Westlaw citation is currently available.

United States District Court,D. Delaware.
TEXTRON INNOVATIONS INC., Plaintiff,
v.
THE TORO COMPANY, Defendants.
**No. Civ.A. 05-486 GMS.**

Oct. 14, 2005.

Edmond D. Johnson, The Bayard Firm, Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE, for Plaintiff.
Richard L. Horwitz, David Ellis Moore, Potter Anderson & Corroon, LLP, Wilmington, DE, for Defendants.

*MEMORANDUM*
SLEET, J.

I. INTRODUCTION

*1 On July 12, 2005, the plaintiff, Textron Innovations Incorporated ("TII") filed the above-captioned action against The Toro Company ("Toro"), alleging infringement of United States Patent Nos. 6,047,530,6,336,311, and 6,336,312, which are directed to a gang type rotary mower. Presently before the court is Toro's motion to transfer this action to the District of Minnesota, pursuant to 28 U.S.C. § 1404(a). For the following reasons the court will deny the motion.

II. BACKGROUND

*1 On July 12, 2005, TII filed the present patent infringement action involving technology related to the rotary mower used to cut golf course roughs. TII is the subsidiary of Textron Inc. and the assignee of the three patents in suit. (*See* D.I. 6, at 1 n. 1; D.I. 19, at 2.) TII is incorporated in Delaware and maintains its headquarters in Providence, Rhode Island. (D.I. 1 ¶ 3.) Toro is a Delaware corporation that maintains its headquarters in Bloomington, Minnesota. (*Id.* ¶ 4.)

Toro's allegedly infringing products are manufactured in Tomah, Wisconsin. (D.I. 6, at 3.)

*1 On August 15, 2005, Toro filed a separate action in Minnesota against Textron, Inc. and Jacobsen, a division of Textron, Inc., alleging that their products infringe two Toro patents relating to hydraulic drive system technology for riding mowers. The following day, Toro filed this motion to transfer venue to the District of Minnesota.

III. DISCUSSION

*1 Pursuant to Section 1404(a), the court may transfer a civil action "for the convenience of parties and witnesses, in the interest of justice, ... to any other district ... where it might have been brought." 28 U.S.C. § 1404(a). It is the movant's burden to establish the need to transfer, and "the plaintiff's choice of venue [will] not be lightly disturbed." *Truth Hardware corp. v. Ashland Prods., Inc.,* No. C.A. 02-1541 GMS, 2003 WL 118005, at *1 (quoting *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995)). In other words, "unless the balance of convenience strongly favors a transfer in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970).

*1 When considering a motion to transfer, the court must determine "whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." *Jumara,* 55 F.3d at 879. This inquiry requires "a multi-factor balancing test," embracing not only the statutory criteria of convenience of the parties and the witnesses and the interest of justice, but all relevant factors, including certain private and public interests. *Id.* at 875. These private interests include the plaintiff's choice of forum; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties; the convenience of the expected witnesses; and the location of books and records, to the extent that they could not be produced in the alternative forum.[FN1] *Id* at 879. Among the relevant public interests are: "the enforceability of the judgment; practical considerations that could make the tri-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2620196 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

al easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id.* at 879-80.

> FN1. The first three of these private interest factors collapse into other portions of the *Jumara* analysis. Thus, the court will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc., 28 F.Supp.2d 192 (D.Del.1998).*

**\*2** Upon consideration of the relevant factors, the court finds that Toro has not met its burden of demonstrating that transfer is appropriate. First, the court concludes that convenience of parties factor weighs in favor of maintaining the action in Delaware. The court will afford less deference to TII's choice of Delaware as a forum because it is not its "home turf," or principal place of business. *See Waste Distillation Tech., Inc. v. Pan Am. Res., Inc., 775 F.Supp. 759, 764 (D.Del.1991).* However, it is not appropriate to disregard a plaintiff's choice of forum where it has a rational and legitimate reason for choosing the forum. *See Joint Stock Soc'y v. Heublein, Inc., 936 F.Supp. 177, 187 (D.Del.1996).* In the present case, the fact that Toro is incorporated in Delaware is a rational and legitimate reason for TII choosing to sue it in Delaware. *See Stratos Lightwave, Inc. v. E20 Communications, Inc.,* No. Civ. A. 01-309-JJF, *2002 WL 500920, at \*2 (D.Del. Mar.26, 2002).* Further, having received the benefits of Delaware incorporation, Toro cannot now complain that another corporation has chosen to sue it here. *See id.* Indeed, it is difficult for the court to find any inconvenience to Toro when it has previously chosen this forum in order to litigate its own patent infringement claims against Textron. *See Toro Company v. Textron, Inc.,* 499 F.Supp. 241 (D.Del.1980). Thus, the convenience of the parties weighs in favor of maintaining this action in Delaware.

**\*2** The court also finds that the location of books and records weighs against granting Toro's motion to transfer. Toro contends that its books and records necessary for litigation are in Minnesota. A court should consider the location of books and records in

its analysis. However, it must only do so to the extent that the files could not be produced in the alternative forum. *Jumara,* 55 F.3d at 879. Here, Toro does not suggest that its documents could not be produced in Delaware. Accordingly, this factor does not weigh in favor of the transfer.

**\*2** Toro also contends that non-party witness convenience weighs in favor of a transfer. According to the briefs, Toro plans to rely on testimony from two original inventors of the patents in-suit, three retired employees, and an employee of a local golf course. The two inventors do not reside within the subpoena power of Delaware or Minnesota. However, they have both stated, in sworn declarations, that they are willing to appear in Delaware for depositions and trial. (D.I. 19, at 3.) Thus, any inconvenience to the inventors weighs in favor of maintaining the action in Delaware.

**\*2** As for the other witnesses, Toro has elected to rely upon retired and, therefore, "third-party" employees that do not reside within the subpoena power of Delaware. In support of its motion, Toro insists that due to personal circumstances, travel to Delaware is extremely inconvenient for its third-party witnesses. (D.I. 6, at 4-6.) The court is not persuaded by this argument, and finds Toro's reliance on former employees, rather than its current employees, questionable. Further, as this court has previously held, a flight to Delaware is not an onerous task warranting transfer. *Truth Hardware Corp. v. Ashland Prods., Inc.,* No C.A. 02-1541 GMS, 2003 WL 118005, at \*2 (D. Del. Jan 13, 2003). Moreover, Toro has not asserted that the identified witnesses are the only individuals capable of testifying as to the technology of the accused products. Nevertheless, if necessary, TII has agreed to take witness depositions in Minnesota. (*See* D.I. 19, at 23.) For these reasons, the court concludes the convenience of the witnesses does not favor transfer in this case.

**\*3** Finally, the court finds that the public interest factors do not weigh strongly in favor of transfer to Minnesota. First, Toro's pending litigation in Minnesota was filed after TII initiated this lawsuit, and involves different patents. Thus, the court believes that this is not a relevant consideration in favor of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                        Page 3
Not Reported in F.Supp.2d, 2005 WL 2620196 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

transfer. *See Mentor Graphics Corp. v. Quickturn Design Sys., Inc., 77 F.Supp.2d 505, 513 (D.Del.1999)* (refusing to give "any weight whatsoever" to a mirror image action filed by the defendant). Additionally, the court is not persuaded that any disparity in court congestion, to the extent there is any, will be so great as to weigh strongly in favor of a transfer. Finally, it is well settled that patent rights are not considered state or local matters and do not implicate local interests. *Jones Pharma, Inc. v. KV Pharm. Co.,* No. Civ. A. 03-786 JJF, *2004 WL 323109, at * 3 (D.Del. Feb.17, 2004).* The court, therefore, finds no strong local interest in litigating in the transferee forum. Accordingly, the court concludes that public interest factors do not favor transfer in the instant case.

## ORDER

*3 For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:
*3 1. The defendant's Motion to Transfer the Case to the United States District Court for the District of Minnesota (D.I.5) is DENIED.

D.Del.,2005.
Textron Innovations, Inc. v. The Toro Co.
Not Reported in F.Supp.2d, 2005 WL 2620196 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 3242158 (Trial Pleading) Defendant's Amended Answer and Counterclaims (Nov. 9, 2005) Original Image of this Document (PDF)
• 2005 WL 2603883 (Trial Motion, Memorandum and Affidavit) Plaintiff Textron Innovations Inc.'s Brief in Opposition to Motion to Transfer Venue (Aug. 30, 2005) Original Image of this Document (PDF)
• 2005 WL 2603569 (Trial Pleading) Answer (Aug. 29, 2005) Original Image of this Document (PDF)
• 2005 WL 2603700 (Trial Motion, Memorandum and Affidavit) Toro's Reply to Textron's Brief in Opposition to Motion to Transfer Venue (Aug. 19, 2005) Original Image of this Document (PDF)
• 2005 WL 2603699 (Trial Motion, Memorandum and Affidavit) Opening Brief Supporting Defendant

Toro's 28 U.S.C. | 1404 (a) Motion to Transfer Venue to Minnesota (Aug. 16, 2005) Original Image of this Document (PDF)
• 2005 WL 2385695 (Trial Pleading) Complaint (Jul. 12, 2005) Original Image of this Document (PDF)
• 2005 WL 2912858 (Trial Pleading) Complaint (Jul. 12, 2005) Original Image of this Document (PDF)
• 1:05cv00486 (Docket) (Jul. 12, 2005)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

APPENDIX B

Westlaw.

Not Reported in F.Supp.2d                                                Page 1
Not Reported in F.Supp.2d, 2003 WL 118005 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

**H**

Briefs and Other Related Documents

Truth Hardware Corp. v. Ashland Products, Inc.D.Del.,2003.Only the Westlaw citation is currently available.

United States District Court,D. Delaware.

TRUTH HARDWARE CORPORATION, Plaintiff,

v.

ASHLAND PRODUCTS, INC., Defendant.

**No. C.A. 02-1541 GMS.**

Jan. 13, 2003.

*MEMORANDUM AND ORDER*

SLEET, J.

### I. INTRODUCTION

*1 On October 15, 2002, the plaintiff, Truth Hardware Corporation ("Truth") filed the instant action alleging patent infringement of its "Advent" window operator. The defendant, Ashland Products, Inc. ("Ashland") now moves to transfer this case to the United States District Court for the Northern District of Illinois, Eastern Division, because litigation concerning a related patent is currently pending between the parties in that venue. For the following reasons, the court will deny Ashland's motion.

### II. DISCUSSION

*1 Section 1404(a) provides that "[f]or convenience of [the] parties and witnesses, in the interest of justice," the court may transfer a civil action "to any other district ... where it might have been brought." FN1 28 U.S.C. § 1404(a). It is the movant's burden to establish the need to transfer, and "the plaintiff's choice of venue [will] not be lightly disturbed." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995).

> FN1. The parties do not dispute that this action could have been filed in the Northern District of Illinois.

*1 When considering a motion to transfer, the court must determine "whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." *Id.* This inquiry requires "a multi-factor balancing test" embracing certain private and public interests. *Id.* at 875, 879. These private interests include the plaintiff's choice of forum; the defendant's preference; whether the claim arose elsewhere; and the location of books and records, to the extent that they could not be produced in the alternative forum.FN2 *Id.* at 879. Among the relevant public interests are: "[t]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id.* at 879-80 (citations omitted).

> FN2. The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc.,* 28 F.Supp.2d 192 (D.Del.1998).

*1 Upon consideration of these factors, the court finds that Ashland has not met its burden of demonstrating that transfer is appropriate. In reaching this conclusion, the court relied on the following considerations, among others. First, Truth and Ashland are Delaware corporations and should reasonably expect to litigate in the forum. Additionally, the patent dispute and technology at issue is not "local" in nature or otherwise unique to the Northern District of Illinois.

*1 Moreover, while it is true that litigation concerning a related patent is currently pending in the Northern District of Illinois, the court concludes that this is not as significant as Ashland suggests. Of critical importance in this regard is the fact that the Illinois action is several years old, has already proceeded through the dispositive motion phase, and is now set to begin trial on March 3, 2003. Thus, the advanced procedural posture of the Illinois action militates

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 118005 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

against a transfer.

*1 Ashland further argues that, because the presiding judge in Illinois is familiar with the parties and the technology, judicial economy would be served by a transfer. While the court does not doubt that the Illinois court may be more familiar with the technology at this juncture, the present court is amply qualified to likewise familiarize itself. To the extent collateral estoppel issues may arise from the Illinois litigation, such issues will ultimately have to be decided by a court, regardless of whether that court sits in Illinois or Delaware. Thus, Ashton's arguments on this point are of little avail.

*2 Finally, Ashton contends that non-party witness convenience weighs in favor of a transfer. The court must again disagree. In support of its contention, Ashton has identified three "critical" non-party witnesses that it claims would be inconvenienced by a trial in Delaware. Truth points out in its answer brief, hoever, that none of these witnesses resides in Illinois either, although it is unclear where they do reside. Nevertheless, it appears that these witnesses will have to travel regardless of where this action proceeds. Furthermore, the court does not find the possibility of a three-hour flight to be an onerous task warranting transfer.

### III. CONCLUSION

*2 For these reasons, IT IS HEREBY ORDERED that:

*2 1. Ashton's motion to transfer the case to the United States District Court for the Northern District of Illinois, Eastern Division, (D.I.9) is DENIED.

D.Del.,2003.
Truth Hardware Corp. v. Ashland Products, Inc.
Not Reported in F.Supp.2d, 2003 WL 118005 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:02CV01541 (Docket) (Oct. 15, 2002)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

APPENDIX C



Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2000 WL 1728354 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

C

Asten Inc. v. Weavexx Corp.D.Del.,2000.Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
ASTEN INC., Plaintiff,
v.
WEAVEXX CORPORATION, Defendant.
No. 99-593 GMS.

Feb. 11, 2000.

George H. Seitz, III, Seitz, Van Ogtrop & Green, P.A., Wilmington, for Asten Inc., plaintiffs.
Thomas C. Grimm, Morris, Nichols, Arsht & Tunnell, Wilmington, for Weavexx Corporation, defendants.

ORDER

SLEET, J.

I. INTRODUCTION

*1 On September 3, 1999, Plaintiff Asten, Inc. ("Asten") filed a complaint alleging patent infringement by Defendant Weavexx Corp. ("Weavexx"). The complaint was not served until September 24, 1999. In the interim, on September 10, 1999, Weavexx filed and served a "mirror image" action in the United States District Court for the Eastern District of North Carolina. In that action, Weavexx seeks a declaration that Asten's patent is invalid and/or not infringed by Weavexx.

*1 Before the court is Weavexx's motion to transfer this case to the Eastern District of North Carolina, or in the alternative, to stay proceedings here pending resolution of the North Carolina declaratory judgment action. Weavexx argues that the case should be transferred pursuant to the "first filed" rule, or, alternatively, pursuant to 28 U.S.C. § 1404.[FN1] For the reasons that follow, the court will deny Weavexx's motion.

FN1. Weavexx's motion requests a transfer pursuant to § 1404 or a stay pursuant to the first-filed rule. See Mot. to Transfer or Stay, at 1. In its briefing, however, Weavexx ap-

pears to request only a transfer, pursuant to either § 1404 or the first-filed rule. See Opening Br. at 2, 5, 18. As discussed below, the court has concluded that the first-filed rule does not operate in Weavexx's favor. The rule, therefore, provides no more basis for a stay than it does for a transfer.

II. BACKGROUND

*1 Asten and Weavexx both design and manufacture certain fabrics used on papermaking machines. Both companies are incorporated in Delaware, but neither company maintains a physical presence in this state. Asten is headquartered in Charleston, South Carolina and maintains its primary manufacturing facility in Appleton, Wisconsin. Weavexx is headquartered and maintains a major manufacturing facility in Wake Forest, North Carolina. It also has manufacturing facilities in several other southern states and in Canada, FN2 and sells its products in the United States, Canada, and Mexico.

> FN2. In addition to its Wake Forest location, Weavexx maintains U.S. manufacturing facilities in Florida, Tennessee, Mississippi and Virginia, and Canadian facilities in Ontario (administrative offices), Nova Scotia and Quebec. See Opp'n Br. at Ex. B.

*1 Asten is the assignee of U.S. Patent No. 5,025,839 ("the '839 patent"), entitled "Two-Ply Papermakers Forming Fabric with Zig-Zagging MD Yarns." Asten contends that Weavexx's "Design 2895" forming fabrics infringe the '839 patent. Weavexx states that it "principally designed" these fabrics at its Wake Forest plant, and that it markets and sells these products out of that facility. The products are manufactured, however, by a "sister-company" of Weavexx that is located in Brazil.

*1 The inventor of the '839 patent, Walter Wright, is employed by Asten at its Appleton, Wisconsin facility. Asten manufactures its "Style 866" forming fabric, based on the '839 patent, at the Appleton plant. The documents relating to the design and develop-

Page C1

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 2
Not Reported in F.Supp.2d, 2000 WL 1728354 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

ment of the '839 patent are also located in Appleton.

## III. DISCUSSION

**\*1** As previously noted, Weavexx seeks to transfer this action pursuant to the "first-filed" rule, or, alternatively, pursuant to 28 U.S.C. § 1404(a).

### A. The First-Filed Rule

**\*1** The first-filed rule is a judicially created doctrine that is designed to avoid concurrent litigation of the same issues, between the same parties, in more than one federal court. *See EEOC v. University of Pennsylvania,* 850 F.2d 969, 971-72 (3d Cir.1988). As its name implies, the rule generally provides that a later filed action should be stayed pending resolution of an earlier filed action, or transferred to the court in which the earlier filed action is pending. *See Peregrine Corp. v. Peregrine Indus., Inc.,* 769 F.Supp. 169 (E.D.Pa.1991).

**\*2** Since Asten filed its complaint in this court seven days before Weavexx filed its federal declaratory judgment action in North Carolina, the rule would not seem to provide a basis for transfer. Weavexx, however, claims that in the Third Circuit, the "first-filed" rule would more accurately be described as the "first-served" rule. It contends that under Third Circuit case law, "the 'first-filed' of two parallel actions is the one in which the district court first obtains jurisdiction of the parties and issues." Opening Br. at 6. Weavexx argues that in Delaware, personal jurisdiction over a defendant does not arise until a complaint is served. Consequently, Weavexx contends that the earlier-*served* North Carolina action should have priority over this earlier-*filed* Delaware action. The court disagrees.

**\*2** Weavexx correctly notes that the Third Circuit Court of Appeals has at times articulated the rule as giving priority to the court "first obtaining jurisdiction of the parties and issues." *See, e .g., Crosley Corp. v. Westinghouse Elec. & Mfg. Co.,* 130 F.2d 474, 475 (3d Cir.1942). But Weavexx places too much significance on this language. In applying the rule, the Third Circuit has never focused on the dates that complaints were served, or, more generally, the dates on which personal jurisdiction was established.

In this court's view, the "parties and issues" language just quoted was merely intended to signify that the first-filed rule should only apply when the competing actions involve the same parties and issues. *See University of Pennsylvania,* 850 F.2d at 971-72 (noting that the rule gives a court the power to enjoin the "subsequent prosecution of *proceedings involving the same parties and the same issues* already before another district court" (emphasis added)).

**\*2** Indeed, the rule is often articulated without language that might suggest a focus on personal jurisdiction. For example, the rule has been described as giving priority to "the court which first has possession *of the subject.* " *University of Pennsylvania,* 850 F.2d at 971 (emphasis added) (citing *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 929 (3d Cir.1941)). In first adopting the rule, the Third Circuit explained that the party who "first *brings a controversy into a court of competent jurisdiction* for adjudication should ... be free from the vexation of subsequent litigation over the same subject matter." *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 930 (3d Cir.1941) (emphasis added). The *Hazeltine* court, therefore, concluded that the lower court had erred in refusing to enjoin later-filed patent infringement actions in the Southern District of Ohio, "when the *jurisdiction of the district court of Delaware has already been invoked* to determine the validity and infringement of all of these patents." *Id.* at 930 (emphasis added). These articulations suggest that the inquiry should focus on the date on which the jurisdiction of *the court* is invoked-i.e., through the filing of a complaint-rather than the date on which personal jurisdiction over the parties is perfected.

**\*3** The only case from this circuit to squarely address the issue concluded that the first-filed rule gives priority to an earlier filed complaint even if a later filed complaint is first served. *See Peregrine Corp. v. Peregrine Indus., Inc.,* 769 F.Supp. 169, 171-72 (E.D.Pa.1991); *but see Osteotech, Inc. v. Gensci Regeneration Sciences, Inc.,* 6 F.Supp.2d 349, 357 n. 4 (D.N.J.1998) (stating, *in dicta,* that a "persuasive argument can be made" that a later filed but first served complaint takes priority in this circuit).[FN3] This court agrees with the conclusion reached in *Peregrine,* which also appears to be the majority view in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                               Page 3
Not Reported in F.Supp.2d, 2000 WL 1728354 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

other circuits.[FN4]

FN3. Though not addressing the "first-filed" vs. "first-served" issue, the court in *Jefferson Ward Stores, Inc. v. Doody Co.,* 560 F.Supp. 35 (E.D.Pa.1983), also placed great emphasis on the "first obtaining jurisdiction of the parties and the issues" language quoted above. *See id.* at 36-37. That court permitted a later filed Pennsylvania action to proceed because personal jurisdiction was being contested in an earlier filed Ohio action. Because the district court in Ohio had not yet ruled on a motion to dismiss for lack of personal jurisdiction, the district court in Pennsylvania concluded that the Ohio court had not yet "obtained jurisdiction of the parties." *See id.* The Pennsylvania court did, however, note that it would reconsider the question of transfer if the Ohio court were to rule that it did have jurisdiction over the parties. *Id.*

Despite its focus on personal jurisdiction, however, *Jefferson Ward* is not helpful to Weavexx's position. In Weavexx's declaratory judgment action in North Carolina, Asten moved for dismissal based on, *inter alia,* lack of personal jurisdiction. As that motion is still outstanding, it might be said that the district court in North Carolina has not yet "obtained jurisdiction" over the parties. Because personal jurisdiction is not contested in the instant action, transfer might be inappropriate even if the court were to construe the rule as focusing on the time at which personal jurisdiction is established.

FN4. *See, e.g., Pacesetter Sys., Inc. v. Medtronic, Inc.,* 678 F.2d 93, 96 n. 3 (9th Cir.1982); *Hospah Coal Co. v. Chaco Energy Co.,* 673 F.2d 1161, 1163 (10th Cir.1982); *Barber-Greene Co. v. Blaw-Knox Co.,* 239 F.2d 774, 778 (6th Cir.1957); *Med-Tec Iowa, Inc. v. Nomos Corp.,* 1999 WL 1084253, at *6 (N.D.Iowa 1999); *Fat Possum Records Ltd. v. Capricorn Records, Inc.,* 909 F.Supp. 442, 446 (N.D.Miss.1995); *but see Northwest Airlines, Inc. v. Astraea*

*Aviation Serv., Inc.,* 930 F.Supp. 1317, 1327 n. 9 (suggesting that first-served action may take priority).

*3 In the present case, this conclusion is fully consistent with the concerns that gave rise to the rule. In *University of Pennsylvania,* the court noted that the rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." 850 F.2d at 971. In Weavexx's declaratory judgment action in North Carolina, the district court recently granted Asten's motion to stay proceedings pending this court's consideration of the instant motion. In so doing, the court stated: "Moreover, the Delaware complaint was filed, if not served, first. This Court sees no reason why the Delaware Court should not be allowed to determine whether to retain jurisdiction before the instant action is allowed to proceed." In light of that ruling, allowing this case to proceed in Delaware would not result in duplicative litigation, and would not undermine comity between federal courts of equal rank.

*3 Finally, it should be noted that in response to the court's inquiry, counsel for Weavexx conceded that at the time Weavexx filed its declaratory judgment action in North Carolina, it was aware that Asten had already filed its complaint here in Delaware. Weavexx offers no explanation as to what function its declaratory judgment action could serve that a counterclaim in the instant action could not. Under these circumstances, the court concludes that the first-filed rule does not provide a basis for staying these proceedings or transferring this case to the Eastern District of North Carolina.

### B. Transfer Pursuant to 28 U.S.C. § 1404

*3 The first-filed rule does not, of course, preclude Weavexx's motion for transfer pursuant to 28 U.S.C. § 1404. That section provides as follows:

*3 For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it may have been brought.

*3 Although the decision to transfer a case is subject to the court's discretion, a plaintiff's choice of forum

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1728354 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

is a "paramount" consideration that is not to be "lightly disturbed." _Schutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir.1970);_ _see also Jumara v. State Farm Ins. Co._, 55 F.3d 873, 879-80 (3d Cir.1995). As such, Weavexx has a heavy burden to carry. The court should not grant a transfer unless the "balance of convenience" weighs strongly in favor of transfer. _See Schutte,_ 431 F.2d at 25.[FN5]

> FN5. Weavexx attempts to incorporate its position regarding the first-filed rule into its § 1404 analysis, arguing that Asten has the burden of establishing that the balance of convenience strongly favors Delaware. Opening Br. at 9. Since the court has already rejected Weavexx's position that the North Carolina action was "first-filed," it need not decide whether a contrary conclusion would have reversed the burden of persuasion in a § 1404 analysis, as Weavexx contends. The court does note, however, that the case Weavexx cites for that proposition, _Ballard Medical Products v. Concord Lab., Inc.,_ 700 F.Supp. 796 (D.Del.1988), does not support Weavexx's view. Rather, the earlier filed action in _Ballard_ was simply considered as a factor favoring transfer-it did not reverse the burden of persuasion. _See id._ at 800-01.

**\*4** In _Jumara,_ the Third Circuit Court of Appeals identified a nonexclusive list of factors that have been used to guide courts in the exercise of their discretion in ruling on requests for transfer. _See Jumara,_ 55 F.3d at 879-80; _see also Affymetrix, Inc. v. Synteni, Inc.,_ 28 F.Supp.2d 192, 196-97 (D.Del.1998). The factors most relevant to this case are discussed below.[FN6]

> FN6. As a threshold matter, this action could have been brought in the Eastern District of North Carolina. _See 28 U.S.C. §§ 1391(b), 1400(b)._ The court can, therefore, proceed to weighing the factors for and against transfer.

### 1. The Convenience of the Parties

**\*4** Litigating this case in North Carolina would be more convenient for Weavexx. Weavexx is headquartered in Wake Forest, which is within the Eastern District of North Carolina. Weavexx has identified six employees likely to testify at trial, each of whom resides within the Eastern District. The accused product was designed in Wake Forest, and Weavexx contends that the vast majority of its documents and records relating to the accused product are maintained at its Wake Forest headquarters.

**\*4** Weavexx also claims that litigating this case in North Carolina would be more convenient for Asten. The entirety of Weavexx's "proof" in this regard is the fact that Asten is headquartered in Charleston, South Carolina. Asten does not vigorously contend, however, that Delaware is more convenient. Although Asten notes that its relevant documents and at least one of its testifying employees are located in Appleton, Wisconsin, it has done little to establish that these facts make Delaware any less inconvenient than North Carolina.

**\*4** The court, therefore, concludes that North Carolina would be more convenient than Delaware for Weavexx, and no more inconvenient than Delaware for Asten. While this factor therefore favors transfer, it does so only slightly. Weavexx concedes that it is financially able to shoulder the expense of litigating this case in Delaware. Further, Weavexx has not established that its business would be disrupted if the employees that are expected to testify at trial must do so in Delaware. Weavexx maintains manufacturing facilities in several southern states and in Canada. It is likely that the six employees Weavexx identifies-upper level management including the company's president and three vice-presidents-are sometimes called upon to travel for company business. Finally, Weavexx has managed to survive two previous lawsuits filed in Delaware _by Weavexx_ against Asten.

### 2. The Convenience and Availability of the Witnesses

**\*4** The convenience of witnesses is often an important factor in a transfer inquiry. _See_ 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION AND RELATED MATTERS § 3851, at 415 (2d ed.1986) [hereinafter

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 5
Not Reported in F.Supp.2d, 2000 WL 1728354 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

WRIGHT & MILLER] (describing this factor as "[p]robably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer"). The convenience of witnesses is only considered, however, "to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879 (citing WRIGHT & MILLER § 3851, at 420-22). Thus, for example, the convenience of witnesses that are employees of a party carries no weight because the parties are obligated to procure their attendance at trial. *See Affymetrix*, 28 F.Supp.2d at 203.

**\*5** Weavexx claims that North Carolina is a more convenient forum than Delaware for most of both parties' witnesses. But Weavexx has failed to sufficiently identify any witnesses that "may actually be unavailable for trial" in Delaware. Indeed, the six "primary anticipated fact witnesses" that Weavexx identifies are all upper level Weavexx employees. As such, Weavexx should be able to assure their attendance at trial.[FN7]

> FN7. Weavexx appears to contend that one of its employee witnesses-the inventor of the accused product-should be treated as a nonparty witness because he is scheduled to retire from Weavexx before the anticipated trial date. Opening Br. at 11. Weavexx, however, provides no information-by affidavit or otherwise-to suggest that this witness may be unavailable for trial in Delaware (or, for that matter, that he plans to remain within the subpoena power of the Eastern District of North Carolina after his retirement). The court is, therefore, not persuaded that this employee's anticipated retirement should have a significant impact on the transfer inquiry.

**\*5** Weavexx also claims that three of the four "major domestic manufacturers of papermaking fabric" are headquartered in either North or South Carolina. Therefore, it asserts that "it is clearly more likely that witnesses having knowledge regarding relevant prior art would be within the subpoena power of the North Carolina Court." Opening Br. at 11. While this may or may not be a reasonable assumption,[FN8] such un-

supported speculation about unspecified witnesses does not carry much weight in a transfer analysis. *Affymetrix*, 28 F.Supp.2d at 205. Further, two of the three "major domestic manufacturers" headquartered in the Carolinas are Asten and Weavexx themselves. As already noted, the convenience of party witnesses generally receives no weight in a transfer analysis. *Id.* at 203.

> FN8. For example, although Asten is headquartered in South Carolina, its employee that is apparently most knowledgeable about the prior art of the '839 patent is located at Asten's manufacturing facility in Appleton, Wisconsin.

**\*5** As such, to the extent that the convenience and availability of witnesses weighs at all in favor of transfer, it does so only slightly.

### 3. Other Factors

**\*5** Although Weavexx principally relies on the two factors discussed above, it recites several other factors that supposedly favor transfer. For example, Weavexx notes that since 1996, the average time from filing to trial for civil actions is 19.3 months in Delaware as compared to 16.5 months in North Carolina. But for the most recent period-the year ending June 30, 1999-Weavexx's statistics show that the average time to trial was one month longer in North Carolina than in Delaware. Virtually all of the other statistics provided by Weavexx (but not cited in its brief) suggest that court congestion is actually worse in the Eastern District of North Carolina than in the District of Delaware. Moreover, Magistrate Judge Thynge of this district served as a mediator in both of the prior Delaware actions between the parties. Judge Thynge will again be available in the present action. It appears, therefore, that administrative considerations and judicial economy actually weigh against transfer.[FN9]

> FN9. As already noted, the district court in North Carolina has granted Asten's motion to stay proceedings in the declaratory judgment action pending this court's decision on Weavexx's motion to transfer. Therefore,

Page C5

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                  Page 6
Not Reported in F.Supp.2d, 2000 WL 1728354 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

there does not appear to be a risk of duplic-ative litigation if this motion is denied.

*5 Next, Weavexx attempts to characterize this ac-tion as a "local controversy" that should be decided close to home. See *Jumara*, 55 F.3d at 879. The court fails to see how a patent infringement action in-volving two large companies that (1) are incorporated in Delaware; (2) are headquartered in different states; and (3) maintain manufacturing facilities in various states and Canada can be considered a "local" North Carolina controversy. Such characterization seems particularly inappropriate where, as here, the compet-ing products at issue are manufactured in Wisconsin and Brazil.

*6 The court finds that the other factors referred to by Weavexx, including those not discussed herein, do not weigh significantly, if at all, in favor of transfer.

### 4. Weighing of Factors

*6 The court recognizes that the ties between this lit-igation and the state of Delaware are not substantial. Nevertheless, Asten's choice of this forum is a "paramount" consideration that is not to be "lightly disturbed." *Schutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970). After weighing the factors dis-cussed above, the court finds that Weavexx has failed to meet its heavy burden of establishing that the "balance of convenience" tips strongly in favor of transfer. As such, Weavexx has failed to establish that transfer is appropriate pursuant to 28 U.S.C. § 1404.

### IV. CONCLUSION

*6 For the foregoing reasons, IT IS HEREBY ORDERED that:

*6 1. Weavexx's motion to transfer this case to the United States District Court for the Eastern District of North Carolina is DENIED; and

*6 2. Weavexx's alternative request to stay these pro-ceedings pending resolution of Weavexx's declarat-ory judgment action in the Eastern District of North Carolina is DENIED.

D.Del.,2000.
Asten Inc. v. Weavexx Corp.
Not Reported in F.Supp.2d, 2000 WL 1728354 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

APPENDIX D

Westlaw.

Not Reported in F.Supp.2d                                Page 1
Not Reported in F.Supp.2d, 2005 WL 1240181 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

**H**

Briefs and Other Related Documents

Adams v. CrowleyD.Del.,2005.Only the Westlaw citation is currently available.

United States District Court,D. Delaware.

Arlin M. ADAMS, Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of Coram Health-care Corporation, a Delaware Corporation, and of Coram, Inc., a Delaware corporation, Plaintiff,

v.

Daniel D. CROWLEY; Donald J. Amaral; William J. Casey; L. Peter Smith; and Sandra L. Smoley, Defendants.

**No. Civ. 04-1565-SLR.**

May 25, 2005.

Rolin P. Bissell, Glenn Christopher Mandalas, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for Plaintiff.

Jeffrey C. Wisler, Connolly, Bove, Lodge & Hutz, Peter J. Walsh, Jr., Potter Anderson & Corroon, LLP, Wilmington, DE, for Defendants.

MEMORANDUM ORDER

ROBINSON, J.

\*1 At Wilmington this 25th day of May, 2005, having reviewed defendants' motions to transfer, and the papers submitted in connection therewith;

\*1 IT IS ORDERED that said motions (D.I.3, 15) are denied, for the reasons that follow:

\*1 1. Background facts. On August 8, 2000, Coram Healthcare Corporation and Coram, Inc. (hereafter "Coram") filed a Chapter 11 petition in the United States Bankruptcy Court for the District of Delaware, together with a proposed plan of reorganization. In December 2000, the bankruptcy court denied confirmation of the plan, based in part on the fact that defendant Crowley had a conflict of interest by reason of his position as CEO of Coram and his contractual relationship with one of Coram's three major lenders.[FN1] After denying confirmation of Coram's second proposed plan of reorganization,[FN2] the bankruptcy court entered an order appointing plaintiff

Chapter 11 Trustee of Coram. On October 27, 2004, the bankruptcy court confirmed the Trustee's plan of reorganization, which plan was implemented on December 1, 2004. Coram is now a private company owned by its former lenders. Under the Trustee's plan as approved by the bankruptcy court, the right to pursue causes of action against Coram's former directors was reserved to the Trustee for the benefit of Coram's former unsecured trade creditors and its former common shareholders.

> FN1. It is alleged that between November 30, 1999, when Crowley became CEO, and July 31, 2000, Crowley caused Coram to pay certain lenders approximately $60 million.

> FN2. The bankruptcy court found in this regard that the Outside Directors, the remaining defendants herein, had done nothing in response to the court's order denying confirmation of the first plan of reorganization.

\*1 2. Standard of review. Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); Affymetrix, Inc. v. Synteni, Inc., 28 F.Supp.2d 192, 208 (D.Del.1998).

\*1 3. The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." Bergman v. Brainin, 512 F.Supp. 972, 973 (D.Del.1981) (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir.1970). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". ADE Corp. v. KLA-Tencor Corp., 138 F.Supp.2d 565, 567 (D.Del.2001); Shutte, 431 F.2d at 25.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1240181 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

*1 4. The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp.,* 997 F.Supp. 556, 562 (D.Del.1998); *Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.,* 2001 WL 1617186 (D.Del. Nov.28, 2001); *Continental Cas. Co. v. American Home Assurance Co.,* 61 F.Supp.2d 128, 131 (D.Del.1999). Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its " 'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re M.L.-Lee Acquisition Fund II, L.P.,* 816 F.Supp. 973, 976 (D.Del.1993).

*2 5. The Third Circuit Court of Appeals has indicated that the analysis for transfer is very broad. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995). Although emphasizing that "there is no definitive formula or list of factors to consider," *id.,* the Court has identified potential factors it characterized as either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citations omitted).

*2 6. The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citations omitted).

*2 7. Analysis. Defendants move to transfer this case to the District of Colorado. In support of their motions, defendants recite several facts. First, none of the defendants live in or near Delaware.[FN3] Coram, now a private company, is incorporated in Delaware with its principal place of business in Denver, Colorado. Coram's employees and business records are located as well in Denver, Colorado. Plaintiff, Coram's Chapter 11 Trustee, resides in Philadelphia. According to defendants, these facts compel the transfer of this case to Colorado because no one involved in the litigation has a direct connection to the District of Delaware.

> FN3. Three of the defendants, Mr. Casey, Mr. Crowley and Ms. Smoley, live in California, while Mr. Amaral lives in Nevada and Mr. Smith lives in Illinois.

*2 8. I respectfully disagree. Coram (through its directors) chose Delaware as its place of incorporation and chose to file for bankruptcy protection in Delaware's bankruptcy court. The bankruptcy court appointed plaintiff the Chapter 11 Trustee and gave him the authority to commence the instant proceedings against the company's former fiduciaries. These facts demonstrate a substantial connection to Delaware. Moreover, given the fact that most discovery will be taken in the same fashion regardless of where trial may proceed,[FN4] the convenience of the defendants is not a compelling factor. For these reasons, and consistent with my practice, I decline to transfer this case on the record presented.[FN5]

> FN4. Depositions generally do not last more than 7 hours; the parties should be able to work out convenient places for their location. Document production may well be in electronic format.

> FN5. Employees of parties must make themselves available for purposes of depositions and trial. It is not apparent to me whether the employees of Coram (in its present corporate form) are subject to this court's jurisdiction. However, neither is it apparent at this stage of the proceedings whether they will voluntarily appear as witnesses, under the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 3

Not Reported in F.Supp.2d, 2005 WL 1240181 (D.Del.)

**(Cite as: Not Reported in F.Supp.2d)**

circumstances at bar. Therefore, I will re-consider my decision not to transfer only if specifically identified, critical witnesses decline to testify in Delaware and cannot be compelled to do so.

D.Del.,2005.

Adams v. Crowley

Not Reported in F.Supp.2d, 2005 WL 1240181 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1199915 (Trial Motion, Memorandum and Affidavit) Plaintiff's Brief in Support of Motion to Vacate Order and Lift Stay (Mar. 9, 2006) Original Image of this Document (PDF)

• 1:04cv01565 (Docket) (Dec. 29, 2004)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

APPENDIX E



Not Reported in F.Supp.2d                                                     Page 1
Not Reported in F.Supp.2d, 2003 WL 118005 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

**H**

Briefs and Other Related Documents

Truth Hardware Corp. v. Ashland Products, Inc.D.Del.,2003.Only the Westlaw citation is currently available.

United States District Court,D. Delaware.

TRUTH HARDWARE CORPORATION, Plaintiff,

v.

ASHLAND PRODUCTS, INC., Defendant.

**No. C.A. 02-1541 GMS.**

Jan. 13, 2003.

*MEMORANDUM AND ORDER*

SLEET, J.

### I. INTRODUCTION

**\*1** On October 15, 2002, the plaintiff, Truth Hardware Corporation ("Truth") filed the instant action alleging patent infringement of its "Advent" window operator. The defendant, Ashland Products, Inc. ("Ashland") now moves to transfer this case to the United States District Court for the Northern District of Illinois, Eastern Division, because litigation concerning a related patent is currently pending between the parties in that venue. For the following reasons, the court will deny Ashland's motion.

### II. DISCUSSION

**\*1** Section 1404(a) provides that "[f]or convenience of [the] parties and witnesses, in the interest of justice," the court may transfer a civil action "to any other district ... where it might have been brought." FN1 28 U.S.C. § 1404(a). It is the movant's burden to establish the need to transfer, and "the plaintiff's choice of venue [will] not be lightly disturbed." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995).

> FN1. The parties do not dispute that this action could have been filed in the Northern District of Illinois.

**\*1** When considering a motion to transfer, the court must determine "whether on balance the litigation

would more conveniently proceed and the interest of justice be better served by transfer to a different forum." *Id.* This inquiry requires "a multi-factor balancing test" embracing certain private and public interests. *Id.* at 875, 879. These private interests include the plaintiff's choice of forum; the defendant's preference; whether the claim arose elsewhere; and the location of books and records, to the extent that they could not be produced in the alternative forum.FN2 *Id.* at 879. Among the relevant public interests are: "[t]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id.* at 879-80 (citations omitted).

> FN2. The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc.,* 28 F.Supp.2d 192 (D.Del.1998).

**\*1** Upon consideration of these factors, the court finds that Ashland has not met its burden of demonstrating that transfer is appropriate. In reaching this conclusion, the court relied on the following considerations, among others. First, Truth and Ashland are Delaware corporations and should reasonably expect to litigate in the forum. Additionally, the patent dispute and technology at issue is not "local" in nature or otherwise unique to the Northern District of Illinois.

**\*1** Moreover, while it is true that litigation concerning a related patent is currently pending in the Northern District of Illinois, the court concludes that this is not as significant as Ashland suggests. Of critical importance in this regard is the fact that the Illinois action is several years old, has already proceeded through the dispositive motion phase, and is now set to begin trial on March 3, 2003. Thus, the advanced procedural posture of the Illinois action militates

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 2
Not Reported in F.Supp.2d, 2003 WL 118005 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

against a transfer.

\*1 Ashland further argues that, because the presiding judge in Illinois is familiar with the parties and the technology, judicial economy would be served by a transfer. While the court does not doubt that the Illinois court may be more familiar with the technology at this juncture, the present court is amply qualified to likewise familiarize itself. To the extent collateral estoppel issues may arise from the Illinois litigation, such issues will ultimately have to be decided by a court, regardless of whether that court sits in Illinois or Delaware. Thus, Ashton's arguments on this point are of little avail.

\*2 Finally, Ashton contends that non-party witness convenience weighs in favor of a transfer. The court must again disagree. In support of its contention, Ashton has identified three "critical" non-party witnesses that it claims would be inconvenienced by a trial in Delaware. Truth points out in its answer brief, hoever, that none of these witnesses resides in Illinois either, although it is unclear where they do reside. Nevertheless, it appears that these witnesses will have to travel regardless of where this action proceeds. Furthermore, the court does not find the possibility of a three-hour flight to be an onerous task warranting transfer.

### III. CONCLUSION

\*2 For these reasons, IT IS HEREBY ORDERED that:

\*2 1. Ashton's motion to transfer the case to the United States District Court for the Northern District of Illinois, Eastern Division, (D.I.9) is DENIED.

D.Del.,2003.
Truth Hardware Corp. v. Ashland Products, Inc.
Not Reported in F.Supp.2d, 2003 WL 118005 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:02CV01541 (Docket) (Oct. 15, 2002)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**APPENDIX F**



Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 24354 (D.Del.)
(Cite as: Not Reported in F.Supp.)

Page 1

**H**
Briefs and Other Related Documents
Bering Diagnostics GmbH v. Biosite Diagnostics, Inc.D.Del.,1998.Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
BERING DIAGNOSTICS GMBH and Behring Diagnostics, Inc., Plaintiffs,
v.
BIOSITE DIAGNOSTICS, INC., Defendant.
No. Civ.A. 97-501 MMS.

Jan. 6, 1998.

David J. Baldwin, and Joanne Ceballos, of Potter Anderson & Corroon, Wilmington, Delaware; of counsel, Herbert F. Schwartz, Kenneth B. Herman, Marta E. Gross, and Keith D. Agisim, of Fish & Neave, New York City, for plaintiffs.
Jeffrey Bove, of Connolly, Bove, Lodge & Hutz, Wilmington, Delaware; of counsel: Richard G. Greco, and Deborah A. Marrone, of Kaye, Scholer, Fierman, Hays & Handler, LLP, New York City, for defendants.

**OPINION**
SCHWARTZ, Senior J.

**I. Introduction**

*1 Behring Diagnostics GmbH, Behring Diagnostics, Inc., and their parent company, Dade International, Inc. (collectively "Behring") brought this patent infringement action against Biosite Diagnostics, Inc. ("Biosite") for infringing Behring GmbH's U.S. Patent No. 4,336,241 (the " '241 Patent"). FN1 Biosite answered this complaint and counterclaimed seeking a declaratory judgment that the '241 Patent is invalid, unenforceable, and not infringed. The product accused of infringement is Biosite's Triage Panel For Drugs of Abuse ("Triage DOA"), which is an immunoassay device which is used for the detection of drugs of abuse in urine.

> FN1. Initially, on September 2, 1997, this action was commenced in the name of Behringwerke GmbH and Behring Dia-

gnostics, Inc.; but this complaint was never served. On September 9, 1997, Behring Diagnostics GmbH and Behring Diagnostics, Inc. refiled and served this present complaint.
In addition, Dade International, Inc., is in the process of changing its name to Dade Behring, Inc., effective January 1, 1998. At that time, Dade Behring, Inc. will be substituted as a party for Dade International, Inc.

*1 Pending before the Court now is Biosite's motion to transfer this action to the United States District Court for the Southern District of California ("Southern District of California"). The Court has jurisdiction over this action under 28 U.S.C. § 1338(a). The motion to transfer will be denied.

**II. Factual Background**

**A. The Parties**

*1 Biosite is a Delaware Corporation with its principal, and only, place of business in San Diego, California. Founded in 1988, Biosite develops, manufactures and markets diagnostics products to detect, *inter alia*, the presence in urine of commonly abused substances. Biosite has currently 210 employees and a market capitalization of $100 million, with approximately $28 million in gross sales. All of its management, scientists, and other employees (except for 20 sales people) are located at the San Diego facility. The accused product, the Triage DOA, was invented and developed in Biosite's San Diego facility and is manufactured at the same San Diego facility.

*1 The Behring companies are a subsidiary of Hoescht AG and also develop, manufacture, and market diagnostics products to detect, *inter alia*, the presence in urine of commonly abused substances. Behring Diagnostics GmbH is a German corporation with its principal place of business in Marburg, Germany. Behring Diagnostics Inc. is at present a Delaware Corporation with its principal place of business in Westwood, Massachusetts. It is currently responsible for being the United States marketer of

Page F1

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.    Page 2
Not Reported in F.Supp., 1998 WL 24354 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

products manufactured by Behring GmbH. Behring Diagnostics GmbH became the current assignee of the '241 Patent when the Behring companies acquired Syva Company ("Syva") in 1995.

*1 Dade International, Inc., a Delaware corporation, is the owner of Behring Diagnostics GmbH and is also the owner, through a holding company, of Behring Diagnostics, Inc. On January 1, 1998, Dade International Inc. intends to change its name to Dade Behring Inc. It will be the same corporate entity it is now, with only a name change. The new entity will also be a Delaware corporation with its principal place of business in Deerfield, Illinois. Dade Behring will be owned in part by Hoescht AG. Dade International Inc., soon to be Dade Behring Inc., has a branch office in Glasgow, Delaware which employs approximately 1000 people and has 25 sales and service offices throughout Delaware.

### B. *Subject Matter of this Lawsuit*

*2 Behring's '241 Patent, which was initially issued on December 28, 1982, to Henry K. Tom ("Tom") and Gerald L. Rowley ("Rowley"), is entitled "Concentrating Zone Method in Heterogeneous Immunoassays". The patent was subsequently assigned to Syva. The '241 Patent is directed to an assay device which can identify the presence of specific antigens in a sample solution such as urine or blood. Such devices are used for, among other things, the detection of drugs of abuse including cocaine and marijuana. Behring asserts Biosite's Triage DOA infringes upon the '241 Patent. The Triage DOA is a diagnostic device capable of detecting, in urine, a broad spectrum of commonly overdosed prescription and illicit drugs. Triage DOA is used by over 2,600 hospitals across the country, including hospitals in Delaware. Over 4.6 million Triage DOA devices have been sold worldwide since the product's introduction.

### III. Standards for Motion to Transfer

*2 28 U.S.C. § 1404(a) provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have

been brought." 28 U.S.C. § 1404(a) (1993). The parties concede that this action could have been brought in the Southern District of California.[FN2] *See* D.I. 28, at 11 n. 2.

> FN2. A civil action for patent infringement "may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established business." 28 U.S.C. § 1400(b). Since Biosite is not only headquartered in San Diego, and its only facility is located there, there is no question that the Southern District of California, in which San Diego lies, is an appropriate venue.

*2 As the text of § 1404(a) indicates, the Court must examine (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice, in determining whether transfer is proper. The Court of Appeals for the Third Circuit has emphasized this is a broad inquiry: a district court must examine "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995). While cautioning "there is no definitive formula or list of factors to consider," *id.,* the court identified potential factors which it characterized as either private or public interests.

*2 The private interests include: (1) plaintiff's forum preference as manifested in the original choice, (2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties as indicated by their relative physical and financial condition, (5) the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, (6) the location of books and records (similarly to the extent that the files could not be produced in the alternative forum). *See id.* (citations omitted).

*2 Among the public interests are: (1) the enforceability of the judgment, (2) practical considerations that could make the trial easy, expeditious, or inexpens-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                           Page 3
Not Reported in F.Supp., 1998 WL 24354 (D.Del.)
(Cite as: Not Reported in F.Supp.)

ive, (3) the relative administrative difficulty in the two fora resulting from court congestion, (4) the local interest in deciding local controversies at home, and (5) the public policies of the fora. *See id.* (citations omitted).

**\*3** Although the factors listed by the *Jumara* Court are merely illustrative and by no means exhaustive, the Court will address the *Jumara* factors which are applicable to the facts of this case as they represent a good point of departure for considering Biosite's motion to transfer. Omnipresent in a transfer analysis is the fact that Biosite bears the heavy burden of establishing the need for transfer. *See Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971); *Sunds Defibrator, Inc. et. al. v. Durametal Corp.,* 1997 WL 74660, at \*2 (D.Del. January 31, 1997). The *Shutte* Court further stated: "[U]nless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte,* 431 F.2d at 25 (emphasis added); *see also Critikon v. Becton Dickinson Vascular Access, Inc.,* 821 F.Supp. 962, 964 (D.Del.1993) ("[T]ransfer will be denied if the factors are evenly balanced or weigh only slightly in favor of transfer.").

### IV. Discussion

#### A. *Private Interests*

#### 1. Plaintiffs' Forum Preference

**\*3** A plaintiff's choice of forum is entitled to substantial deference and "should not be lightly disturbed." *Shutte,* 431 F.2d at 25. This deference is particularly due when the plaintiffs have chosen their forum because of "legitimate, rational concerns." *Waste Distillation Tech., Inc. v. Pan Am. Resources, Inc.,* 775 F.Supp. 759, 764 (D.Del.1991).

**\*3** Biosite contends that there are no rational factors that weigh in favor of Behring's choice of forum. Biosite points out that Delaware is not the home of Behring Diagnostics GmbH, nor is it the physical home of the soon to be formed Dade Behring, Inc., which is based in Illinois. Moreover, Biosite cites the

"home turf" rule for the proposition that because Delaware is not Behring's "home turf," the Court should accord less weight to Behring's choice of forum. Lastly, Biosite maintains that a statutory place of incorporation is entitled to less weight than if the physical presence of the company was in the selected jurisdiction. Biosite concludes that even though Delaware is the place of incorporation of Behring Diagnostics, Inc. and will be for the newly-formed Dade Behring, that fact has no practical bearing on the logistics of trial, and is entitled to little weight.

**\*3** Behring, on the other hand, asserts that even though Delaware is not its principal place of business, its choice of forum is entitled to deference, and should not be upset unless the defendant can show the balance of convenience strongly favors transfer. Behring contends that its choice of forum is legitimate and rational because Syva is, and Dade Behring will be, a Delaware corporation, Biosite is a Delaware corporation, Biosite pursues business activities in Delaware, Behring's counsel would like to pursue mediation with Magistrate Judge Trostle of this District because of past satisfying experiences, and because Biosite is selling the infringing product in Delaware and is actively inducing infringement of the '241 Patent by such sales in Delaware.

**\*4** The Delaware district court has not always been consistent as to what level of deference a plaintiffs' status as a Delaware corporation should play in the motion to transfer calculus. *Compare Joint Stock Soc'y v. Heublein, Inc.,* 936 F.Supp. 177, 187 (D.Del.1996) ("[Plaintiff's] mere status as a plaintiff Delaware corporation is not entitled to great weight in determining whether to grant a motion to transfer, especially because [plaintiff's] principal place of business is elsewhere."), *with Critikon,* 821 F.Supp. at 965 ("[T]he fact that [plaintiff] incorporated in Delaware should not be taken lightly. By incorporating in Delaware, it can be assumed that [plaintiff] desired the benefits it believed Delaware provides to chartered corporations."). Suffice it to say that, "[i]t is legitimate and rational ... for a plaintiff to choose to litigate in a forum in which it is incorporated." *See Joint Stock Soc'y,* 936 F.Supp. at 187.

**\*4** Moreover, Biosite's reliance on the "home turf"

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 24354 (D.Del.)
(Cite as: Not Reported in F.Supp.)

Page 4

rule is misplaced. Although the vitality of the home turf rule has recently been put in doubt, *see Sunds Defibrator, 1997 WL 74660, at \*2 n. 2*, to date it has not received a formal internment. To the extent, if any, that weak vital signs remain, it would not be applicable on the presented facts. The home turf rules applies when the forum closest to a plaintiff's principal place of business is selected in order that personal service over the defendant can be obtained.[FN3] This is simply not the situation in this case.

> FN3. This Court has recently cast doubt on this rule's existence in *Sunds Defibrator*, in which the Court stated: "[A] strong argument can be made that the 'home turf rule' is now subsumed in the *Jumara* private interest factor with emphasis on 'plaintiff's forum preference.' " *Sunds Defibrator, 1997 WL 74660, at \*2 n. 2*.

**\*4** Lastly, the Court finds that the other factors identified by Behring for bringing this case in Delaware are legitimate and rational reasons for Delaware to be the plaintiff's choice of forum. *See Waste Distillation, 775 F.Supp. at 764* ("[S]uffcient that the forum is near the plaintiff's principal place of business and/or that it is consistent with the plaintiff's legitimate concerns."). The fact that Biosite conducts a substantial amount of business in Delaware and that the infringing product continues to be sold in Delaware counsels in favor of Behring picking Delaware as its forum of choice. *See In re ML-Lee Acquisition Fund II, L.P., 816 F.Supp. 973, 976 (D.Del.1991); Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc., 707 F.Supp. 1429, 1437 (D.Del.1989)*. In addition, in cases where a plaintiff, like Biosite, is itself a Delaware corporation, the Court has stated: "[Where defendant] chose Delaware as its legal home ..., [it] should not now complain that another corporation has decided to sue [it] in Delaware." *Critikon, 821 F.Supp. at 965*. Further, the fact that Behring's counsel has had previously good experiences with mediation in this district with Magistrate Judge Trostle, cannot be said to be an illegitimate or irrational reason to pick the Delaware forum. For all these reasons, Delaware is a choice of forum based on the rational and legitimate concerns of Behring and plaintiff's selection is due substantial deference.

### 2. Convenience of the Parties

**\*5** Biosite contends that there is no practical or logical reason for this case to be tried in Delaware because the named parties do not have their operations in Delaware. Biosite also maintains the presence of key personnel at litigation on the East Coast would disrupt the companies' operations. Lastly, Biosite asserts Behring Diagnostics, Inc., will no longer be an existing entity after the merger with Dade International and in any event, because Behring Diagnostics, Inc. was never alleged to be the owner or exclusive licensee of the '241 Patent, it has no standing to sue. Biosite therefore alleges that the convenience of the parties strongly favors transferring this litigation to the California forum.

**\*5** Behring, on the other hand, argues that Delaware is not an inconvenient forum for Biosite. Behring points out that Biosite is a national company with thousands of Triage DOA units sold in Delaware every year. In addition, Behring challenges Biosite's contention that loss of key personnel would disrupt its operations, as only four witnesses from Biosite have been identified. Behring also contends that Biosite is not a small company and would have no problem trying this case in Delaware. Lastly, Behring asserts that Delaware is a convenient forum in which to litigate because Behring's three offices that are most involved in this dispute-the Behring Diagnostics, Inc. office in San Jose, California, soon to be a Dade Behring office, the Dade Behring headquarters in Deerfield, Illinois, and Behring Diagnostics GmbH in Marburg, Germany-are all approximately equidistant to Delaware.

**\*5** The Court finds that the convenience of the parties factor does not militate strongly in favor of either of the parties and this factor therefore does not strongly favor transfer. First, both parties are national corporations with revenues in the millions of dollars. *See The Media Group, Inc. et. al. v. Turtle Wax, Inc. et. al., 1996 WL 756760, at \*5 (D.Del. December 23, 1996)*. As such, the relative economic burden to Biosite in litigating in Delaware is minimal. *See id*. Second, although it is true that Biosite has its business operations in San Diego and it would be more convenient for key personnel to attend trial in the Southern Dis-

Page F4

Not Reported in F.Supp.                                                      Page 5
Not Reported in F.Supp., 1998 WL 24354 (D.Del.)
(Cite as: Not Reported in F.Supp.)

trict of California, it is also true that Delaware represents a good compromise for Behring since its relevant companies are located anywhere between San Jose and Germany. Third, Biosite's contention that Behring Diagnostic does not have standing to sue is not properly before this Court on a motion to transfer. As such, the Court declines to address that issue at this time.

*5 Given the above analysis, the convenience of the parties does not strongly weigh in favor of transferring this action to the Southern District of California.

### 3. Convenience of the Witnesses

*5 Under § 1404(a), "the Court must determine whether the convenience to all witnesses weighs strongly in favor of a transfer." *Pursuit Athletic Footwear v. Save Power Ltd.,* 1996 U .S.Dist. LEXIS 8158, at *22 (D.Del. June 7, 1996). "While convenience of the witnesses is a factor, it is important only to the extent the witnesses would be unavailable for trial in one of the fora. Each party is able to procure the attendance of its own employees for trial." *Sunds Defibrator,* 1997 WL 74660, at *3.

*6 Biosite contends that the convenience of the witnesses "entirely" favors the Southern District of California. Biosite argues that all of the most likely witnesses are in California, and many of the most important witnesses-including the two inventors and two attorneys that prosecuted the patent-are third parties and could only be compelled to appear in California. Behring, on the other hand, asserts that as the inventors, Tom and Rowley, are now consultants for Behring, these witnesses have agreed to testify in Delaware. In addition, Behring maintains that Dr. Ullman, another third-party witness identified by Biosite, is also employed as a consultant for Behring and has agreed to appear in Delaware. As for the two patent attorneys, Dr. Leitereg and Betrand Rowland, Behring avers that Rowland will voluntarily appear in Delaware and because Dr. Leitereg is sick, he would probably be unable to appear in California or Delaware.

*6 The Court does not find that convenience of the witnesses strongly favors transfer. It is true that mere

assurances that a witness has agreed to testify in the fora is not equivalent to having the actual subpoena power of assuring a witnesses' presence. *See Schering Corp. v. Amgen Inc.,* 969 F.Supp. 258, 269 (D.Del.1997) (citing *Sherwood Medical Co. v. IVAC Medical Systems, Inc.,* 1996 WL 700261, at *5 (D.Del. November 25, 1996)). While counsel for Behring cannot guarantee that these witnesses will appear in Delaware, they would all certainly be within the subpoena power of the Southern District of California as California citizens.

*6 However, both parties at oral argument conceded that if it became clear shortly before trial that one of these critical witnesses, i.e ., Tom, Rowley, Ullman or Rowland, refused to come to Delaware, and was capable testifying live in California, it would be in the Court's power to transfer the case to the Southern District of California. Biosite points out, however, that such a late transfer may not be practical and may cause significant delay. Be that as it may, to the extent that the convenience of the witnesses weighs in favor of Biosite, it does not do so strongly given the option available to the Court to transfer this case later in the proceedings should it appear necessary to defendant.

### 4. Location of Documents

*6 Biosite makes much of the argument that most of the relevant documents are located in California. But as Behring correctly observes, "transferring documents form the West Coast to Delaware poses no large obstacle." *See Schering,* 969 F.Supp. at 269. Further, this factor is only relevant to the extent that files could not be produced in the alternative forum. *See Jumara,* 55 F.3d at 879. Because there has been no showing that any relevant document could not be produced in Delaware or that transferring documents to Delaware would pose a significant burden, the Court concludes that this factor does not strongly favor transfer.

*6 Thus, although one of the private factors considered above, namely the convenience of the witnesses, may weigh to some extent in favor of transfer, when construed in light of the strong deference paid to plaintiff's choice of forum, the private interests do

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

not **strongly** favor transfer to the Southern District of California.

### B. Public Interests

### 1. Practical Considerations of Efficiency and Expense

\*7 Biosite asserts the relative congestion of the courts does not favor Delaware over the Southern District of California. To support its argument, Biosite cites court statistics that show the mean time from filing to disposition is slightly shorter in the Southern District of California than in the District of Delaware. Biosite also observes that since Syva previously brought an action for infringement of the same '241 Patent against Hybritech, Inc., *see Syva Company, Inc. v. Hybritech Inc.,* 1989 U.S.Dist. LEXIS 16678 (S.D.Cal.1989), the California forum would be more appropriate for this litigation. Behring, on the other hand, contends that one of the reasons it chose to litigate in Delaware was because of the relatively light docket and speedy disposition of cases. In addition, Behring points out that the Southern District of California has little knowledge or memory of the underlying technologies discussed in the *Syva* case.

\*7 Delaware's light docket "has been repeatedly recognized as a legitimate reason by both the Third Circuit Court of Appeals and this district." *Media Group,* 1996 WL 756760, at \*7. In addition, pursuant to Delaware's Civil Justice Expense and Delay Reduction Plan and the Civil Justice Reform Act of 1990, "trial [in Delaware] shall be scheduled to occur within 12 months, if practicable, and no later than 18 months, after the filing of the complaint." *See* 28 U.S.C. § 471 (1993); D.Del.LR 16.2(c). Lastly, the Court finds no significance in the fact that the *Syva* case, which occurred almost ten years ago and involved two different parties, was in California. The Court therefore holds that this factor also does not weigh strongly in favor of transfer.

### 2. The Local Interest and Public Policies of Fora

\*7 Biosite contends that since it is headquartered in California, has research and manufacturing facilities in California, and most of the relevant events occurred in California, the public interest favors trans-

fer to California. Biosite urges the Court to adopt the "center of gravity" test. Briefly stated, that test states that when the center of gravity of the patent infringement suit is not the plaintiff's preferred forum, less weight should be given to plaintiff's choice of forum. *See, e.g., Renzetti v. D.H. Thompson, Inc.,* 1997 U.S.Dist. LEXIS 6121, at \*9 (E.D.Pa. May 2, 1997). Biosite maintains that the center of gravity is California and therefore, California is the appropriate forum for this patent litigation. Behring asserts because Biosite sells their products in Delaware and because there have been acts of infringement in Delaware, Delaware is just as an appropriate forum as California.

\*7 The *Schering* Court, in a similar patent transfer case, directly answered Biosite's "center of gravity" challenge in the following manner:

\*7 First, although headquartered in California, [defendant] is a Delaware corporation. More significant, however, is the nature of the dispute in this case. [The allegedly infringing product] is sold internationally and generates millions of dollars in revenues. The dispute over the [patent in suit] can hardly be described as a local California controversy, or implicating public policies unique to California. Accordingly, the public interests in this case do not tip the balance of convenience strongly in favor of [defendant].

\*8 *Schering,* 969 F.Supp. at 269. This holding applies equally to the facts of this case. The Court holds that the public interests, represented by the public policies of the fora and the local interest of deciding controversies at home, do not weigh strongly in favor of transfer.

\*8 Because, on balance, both the public and private interests therefore do not weigh strongly in favor of transferring this litigation to the Southern District of California, Biosite's motion to transfer will be denied.

\*8 An appropriate order will issue.

D.Del.,1998.
Bering Diagnostics GmbH v. Biosite Diagnostics, Inc.
Not Reported in F.Supp., 1998 WL 24354 (D.Del.)

Briefs and Other Related Documents (Back to top)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 24354 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

• 1:97CV00501 (Docket) (Sep. 02, 1997)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.