# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NESSCAP CO., LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 06-00764-GMS |
| ) | |
| MAXWELL TECHNOLOGIES, INC., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MAXWELL TECHNOLOGIES, INC.'S ANSWERING BRIEF IN OPPOSITION TO NESSCAP CO., LTD.'S MOTION FOR LEAVE TO FILE SUR-REPLY TO MAXWELL'S MOTION TO TRANSFER TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA

YOUNG CONAWAY STARGATT
 & TAYLOR, LLP
Josy W. Ingersoll (No. 1088)
Karen E. Keller (No. 4489)
1000 West Street
Brandywine Building, 17th Floor
Wilmington, DE 19801

P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600
kkeller@ycst.com

MORRISON & FOERSTER LLP
David C. Doyle (CA Bar No. 70690)
Eric M. Acker (CA Bar No. 135805)
Brian M. Kramer (CA Bar No. 212107)
12531 High Bluff Drive, Suite 100
San Diego, CA 92130
(858) 720-5100

Dated: March 12, 2007      *Attorneys for Defendant Maxwell Technologies, Inc.*

sd-363194

**TABLE OF CONTENTS**

Page

I. NATURE AND STAGE OF THE PROCEEDINGS AND SUMMARY OF THE ARGUMENT ................................................................................. 1

II. STATEMENT OF FACTS AND ARGUMENT ............................................... 1

    A. Maxwell Identified Dr. Bendale and Mr. Farahmandi as Infringement Witnesses in the Opening Brief.......................................... 1

    B. Maxwell Explained in Its Opening Brief That the D Cell Line of Ultracapacitors Represented Only 2 of 29 Accused Products ................. 2

    C. Maxwell Appropriately Noted in the Reply Brief That the Prosecuting Patent Attorney No Longer Lives in Washington, D.C., Making Wilmington No More Convenient Than San Diego .......... 4

    D. NessCap's Failure to Provide This Court or Maxwell With Its San Diego Litigation Papers Precludes This Court From Learning Additional Bases to Transfer the Case to the Southern District of California ............................................................................................ 5

III. CONCLUSION ................................................................................................. 6

## TABLE OF AUTHORITIES

**LOCAL RULE**

**Page**

D. Del. L.R. 7.1.3(c)(2)..................................................................................................2

I.     NATURE AND STAGE OF THE PROCEEDINGS AND SUMMARY OF THE ARGUMENT

NessCap's motion for leave to file a sur-reply should be denied. NessCap's claims that Maxwell improperly reserved material for the reply brief are meritless. Each of the reply brief points criticized by NessCap is tied directly to the opening brief and responds, appropriately, to arguments made by NessCap in the answering brief.

II.    STATEMENT OF FACTS AND ARGUMENT

   A.    Maxwell Identified Dr. Bendale and Mr. Farahmandi as Infringement Witnesses in the Opening Brief.

NessCap complains that Maxwell explained in its reply brief that Dr. Bendale and Mr. Farahmandi are the only witnesses who can testify regarding their intent (or lack thereof) to willfully infringe NessCap's patents. On pages 9-11 of the opening brief, Maxwell identified Dr. Bendale and Mr. Farahmandi as former Maxwell Research & Development directors and broadly explained the reasons why each will likely be a witness on a number of topics at trial, including both infringement and invalidity. (*E.g*, D.I. 13 at 11 ("Mr. Farahmandi is likely to be a witness on both the issues of infringement and invalidity."); *id.* at 10 ("Because of [Dr. Bendale's] role with both Maxwell's ultracapacitor products and ultracapacitor patents, she is likely to be a witness in both the Delaware and San Diego litigations.").) NessCap's opposition brief implied that Dr. Bendale and Mr. Farahmandi were only identified as prior art witnesses and that other witnesses could instead testify about prior art. (D.I. 23 at 10.) NessCap specifically argued that Maxwell "fails to assert that these are the only individuals capable of testifying on this issue." (*Id.* (emphasis in original).) In direct response to that argument, Maxwell noted in its reply brief that a number of witnesses could testify about infringement in general, but that only Dr. Bendale and Mr. Farahmandi could testify

1

whether they willfully infringed NessCap's patents when designing and commercializing Maxwell's ultracapacitor products. (D.I. 24 at 2-4.) Maxwell's reply brief, therefore, does not "stand in stark contrast" to the arguments in its opening brief. Rather, it is a fair reply to unpersuasive arguments made by NessCap, using the factual basis established in Maxwell's opening brief.

Reply briefs run afoul of this Court's rules when the moving party "reserve[s] material . . . which should have been included in a full and fair opening brief." D. Del. L.R. 7.1.3(c)(2). Maxwell did not know when drafting its opening brief that NessCap would argue in its answering brief that Dr. Bendale and Mr. Farahmandi were not the "only" witnesses who could testify about certain topics. Maxwell used its reply to address that very argument, noting that there was, in fact, at least one topic for which only Dr. Bendale and Mr. Farahmandi could testify – their willful infringement. This did not amount to "reserve[ing] material for the reply brief which should have been included in a full and fair opening brief." The fact that Dr. Bendale and Mr. Farahmandi are the only witnesses who can testify regarding their own willfulness, thus, should not be stricken.

> **B.    Maxwell Explained in Its Opening Brief That the D Cell Line of Ultracapacitors Represented Only 2 of 29 Accused Products.**

NessCap next complains that "Maxwell adds another new argument in its Reply: that its Switzerland-based design team invented 'only 2 of 29' accused products." (D.I. 29, Appendix A at 2.) This is another example of NessCap using truncated quotations to create a straw man. All facts that NessCap complains about were set forth in the opening brief. NessCap twisted these facts in the answering brief, requiring clarification by Maxwell – without adding new material – in the reply brief. Specifically, Maxwell

disclosed that its D cell line of ultracapacitors represents only 2 of 29 accused products in its opening brief:

- "Maxwell currently makes and sells 29 different BOOSTCAP® ultracapacitor products in a range of sizes and modular configurations and has made and sold many more that are not currently on the market." (D.I. 13 at 9 (citing Balanson Decl. ¶ 5).)

- NessCap's complaint accused all of Maxwell's BOOSTCAP® ultracapacitors of infringing its patent. (D.I. 13 at 9 ("NessCap's bare complaint does not give a single example of which of the 29 different BOOSTCAP® ultracapacitors meet the limitations of the '544 patent.").)

- NessCap issued a press release identifying the "D cell line" of Maxwell ultracapacitors as some of the infringing products. (D.I. 13 at 12; D.I. 15, Ex. 1 (press release).)

- The "D cell line of Boostcap® ultracapacitors" was invented by a team of Maxwell employees based in Switzerland. (D.I. 13 at 12 (citing, D.I. 17, Gallay Decl. ¶¶ 2, 7; D.I. 16, Schneuwly Decl. ¶¶ 2, 7).)

- The D cell line of Maxwell ultracapacitors encompasses two ultracapacitors, those identified by serial numbers BCAP0310 and BCAP0350.[1]  (D.I. 17, Gallay Decl. ¶ 7; D.I. 16, Schneuwly Decl. ¶ 7.)

---

[1] The serial numbers refer to the capacitance of each product. The BCAP0310 has a capacitance of 310 farads. The BCAP0350 has a capacitance of 350 farads. The Gallay and Schneuwly declarations contain a typographical error identifying the 350 farad ultracapacitors as having serial number BCAP0340. Maxwell does not sell a 340 farad ultracapacitor.

NessCap ignored the above facts in Maxwell's opening brief. Instead it tried to bolster the role of the Swiss inventors by pretending that Dr. Bendale and Mr. Farahmandi were only relevant to prior art issues and using truncated quotations to argue that the Swiss inventors were the only ones who invented the accused products in the case. (*See e.g.*, D.I. 23 at 11, 12, and 17.) In its reply brief, Maxwell appropriately pointed out NessCap's misleading truncation and identified the facts previously set forth in its opening brief.[2]

### C. Maxwell Appropriately Noted in the Reply Brief That the Prosecuting Patent Attorney No Longer Lives in Washington, D.C., Making Wilmington No More Convenient Than San Diego.

With regard to the prosecuting patent attorney of the NessCap patent, NessCap changes gears and complains that Maxwell's reply brief said too little instead of too much. In its opposition brief, NessCap argued that the law firm that prosecuted the patent-in-suit is located in Washington, D.C., which is closer to Wilmington than San Diego. In its reply brief, Maxwell appropriately noted that the only patent attorney listed on the face of the patent-in-suit, Mr. Phillip Avruch, now lives over 1,000 miles away in South Florida. (D.I. 24 at 11.) NessCap seeks to use a sur-reply brief to argue, without citation, that another lawyer who does not appear on the face of the patent-in-suit, a Mr. Steven M. Rabin, was also involved in the prosecution of the patent. NessCap implies,

---

[2] In its surreply, NessCap is again using truncated quotations to twist Maxwell's arguments. Maxwell did not argue that the Swiss inventors invented "only 2 of 29" accused products. Maxwell instead noted that "The 'D cell line of Boostcap® ultracapacitors' was invented by a team of Maxwell employees based in Switzerland," and that the D cell line represents 2 of 29 accused products. (D.I. 13 at 9, 12.) The Swiss inventors designed 4 of 29 (14%) of Maxwell's ultracapacitors, and the San Diego inventors designed the remaining 25 of 29 (86%). This is consistent with Maxwell's argument that most of the products were invented in San Diego and that most of the witnesses will be San Diego-based witnesses, some of whom are no longer employed by Maxwell.

without any factual support, that Mr. Rabin and other still unidentified witnesses might find that Wilmington is more convenient than San Diego. The fact remains, however, that the prosecuting patent attorney listed on the face of the patent-in-suit resides in Florida. The fact that an attorney who may have been involved at some point in the prosecution of the patent-in-suit resides in Washington, D.C., therefore, is not persuasive.

### D. NessCap's Failure to Provide This Court or Maxwell With Its San Diego Litigation Papers Precludes This Court From Learning Additional Bases to Transfer the Case to the Southern District of California.

Finally, NessCap complains about the preliminary injunction briefing in the San Diego litigation. Maxwell noted in its reply brief that it would have been able to provide this Court with even more bases linking the San Diego litigation and the present litigation if NessCap provided Maxwell and this Court its opposition brief it filed under seal in the San Diego litigation. Judge Houston's Order does not preclude NessCap from providing this Court or Maxwell with a copy of the arguments or issues identified by NessCap in the San Diego litigation. NessCap's claim that it would be prejudiced by providing Maxwell with a copy makes no sense. NessCap has filed a separate lawsuit in this Court seeking a declaratory judgment that the same two patents asserted by Maxwell in the San Diego litigation are not infringed and are invalid. NessCap will have to reveal the basis for filing that separate lawsuit. Thus, revealing its opposition brief to Maxwell's motion for preliminary injunction based on the same patents cannot possibly be prejudicial to NessCap. The effect of NessCap's unwillingness to disclose its position is that this Court

is precluded from learning whether there are even more reasons to transfer the case to San Diego based on the positions being taken by NessCap in the San Diego litigation.[3]

### III. CONCLUSION

Maxwell respectfully requests that the Court deny NessCap's motion for leave to file a sur-reply and that the Court grant Maxwell's motion to transfer this case to the Southern District of California.

Dated: March 12, 2007

YOUNG CONAWAY STARGATT
 & TAYLOR, LLP

/s/ *Karen E. Keller*

Josy W. Ingersoll (No. 1088)
Karen E. Keller (No. 4489)
1000 West Street
Brandywine Building, 17th Floor
Wilmington, DE 19801

P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600
kkeller@ycst.com

MORRISON & FOERSTER LLP
David C. Doyle (CA Bar No. 70690)
Eric M. Acker (CA Bar No. 135805)
Brian M. Kramer (CA Bar No. 212107)
12531 High Bluff Drive, Suite 100
San Diego, CA 92130
(858) 720-5100

*Attorneys for Defendant Maxwell Technologies, Inc.*

---

[3] NessCap's allegations regarding the "litany of missteps" regarding service of the complaint in San Diego are all without merit. Because they have no bearing on whether this case should be transferred, Maxwell will not belabor the Court with the arguments that are currently being considered by Judge Houston in San Diego.

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on March 12, 2007, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Denise Seastone Kraft, Esquire
>EDWARDS ANGELL PALMER & DODGE LLP
>919 North Market Street
>Suite 1500
>Wilmington, DE 19801
>*dkraft@eapdlaw.com*

I further certify that on March 12, 2007, the foregoing document was served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated below:

>**BY E-MAIL ON MARCH 12, 2007 AND**
>**FEDERAL EXPRESS ON MARCH 13, 2007**
>
>George W. Neuner, Esquire
>Brian M. Gaff, Esquire
>EDWARDS ANGELL PALMER & DODGE LLP
>101 Federal Street
>Boston, MA 02110

>YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
>/s/ *Karen E. Keller*
>Karen E. Keller (No. 4489)
>The Brandywine Building, 17th Floor
>1000 West Street
>Wilmington, DE 19801
>302-571-6600
>*kkeller@ycst.com*